UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF MANUFACTURERS, <br> 1331 Pennsylvania Ave., NW <br> Washington, D.C., 20004 <br><br> **Plaintiff,** <br><br> v. <br><br> HONORABLE JEFFREY A. TAYLOR, <br> United States Attorney For The District Of Columbia, <br> 555 4th St., NW <br> Washington, D.C., 20530; <br><br> HONORABLE NANCY ERICKSON, <br> Secretary Of The Senate Of The United States, <br> Capitol Building, S-312 <br> Washington, D.C., 20510; <br><br> HONORABLE LORRAINE C. MILLER, <br> Clerk Of The House Of Representatives Of The United States, <br> U.S. Capitol, Room H154 <br> Washington, D.C., 20515, <br><br> **Defendants.** | Case No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Nature of the Action

1. This is an action to vindicate core First Amendment rights of free speech, association, and petitioning that are being infringed upon by a vague, overbroad, and burdensome provision of the Lobbying Disclosure Act of 1995, 2 U.S.C. § 1601 *et seq.* ("Act"), as amended by the Honest Leadership and Open Government Act of 2007, Pub. L. No. 110-81, 121 Stat. 735 ("Amendments").

**Jurisdiction and Venue**

2.  As an action to vindicate First Amendment rights through the declaratory and injunctive relief authorized by 28 U.S.C. §§ 2201 and 2202, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

3.  Venue is proper under 28 U.S.C. § 1391 because a Defendant resides in this district; a substantial part of the events or omissions giving rise to the claim occurred here; and Plaintiff resides in this district and no real property is involved in this action.

**Parties**

4.  Plaintiff, the National Association of Manufacturers ("NAM"), is a non-profit trade association founded in 1895 to promote trade, advocate for economic growth, and represent the interests of its members. For over a century, the NAM has represented the interests of its members in petitioning, speaking to, and otherwise dealing with the government, including members and employees of the United States Senate and House of Representatives, as well as policy-level employees and officers of the Executive Branch. As its website explains, the NAM advocates "on behalf of its members to enhance the competitiveness of manufacturers by shaping a legislative and regulatory environment conducive to U.S. economic growth and to increase understanding among policymakers, the media and the general public about the vital role of manufacturing in America's economic and national security for today and in the future." NAM, *About Us*, http://nam.org/s_nam/sec.asp?CID=4&DID=2 (last visited Feb. 4, 2008). The NAM also has represented its members in litigation, seeking to preserve their First Amendment

rights to participate freely and effectively in public policy discourse. The NAM does not publicly list its members, although its website and other readily-available materials make clear the types of interests it represents and even identify some members, including firms represented on its board and in other leadership positions. The association is formally and publicly incorporated in New York and is recognized as tax exempt under § 501(c)(6) of the Internal Revenue Code.

5.  In addition to bringing this action in its own right, the NAM also has standing to challenge enforcement of the Amendments on behalf of the association's organizational members. Such organizations have already suffered and continue to face sustained injury to their First Amendment rights, including their right to anonymous policy speech and related associational activities. Since these members would have standing to sue in their own capacities, the NAM may assert their claims against the Defendants because the interests sought to be protected are germane to the NAM's purpose and this lawsuit does not require participation by the organizational members. Moreover, with respect to the overbreadth and vagueness issues alleged below, the NAM also has standing to assert the First Amendment injury of third-parties who are subject to the challenged provision.

6.  Defendants are persons responsible for implementation and enforcement of the amended Act.

    (a)  Defendant, the Honorable Nancy Erickson, is Secretary of the Senate of the United States. Her responsibilities include receiving mandatory reports concerning lobbying activities, reviewing them for any deficiencies, and referring cases of apparent

noncompliance to the United States Attorney for the District of Columbia for enforcement action. § 1605(a).[1]

(b)     Defendant, the Honorable Lorraine C. Miller, is Clerk of the House of Representatives of the United States. Her responsibilities include receiving mandatory reports concerning lobbying activities, reviewing them for any deficiencies, and referring cases of apparent noncompliance to the United States Attorney for the District of Columbia for enforcement action. *Id.*

(c)     Defendant, the Honorable Jeffrey A. Taylor, is the United States Attorney for the District of Columbia. His responsibilities include enforcement of the penalty provisions of the Act. Because the Act requires reporting within the District of Columbia, that is where such offenses typically will be prosecuted. The Act provides that the other two Defendants shall "notify the United States Attorney for the District of Columbia that a lobbyist or lobbying firm may be in noncompliance." § 1605(a)(8).

7.     Defendants Erickson and Miller are directed by the amended Act to "provide guidance and assistance on the registration and reporting requirements of [the] Act and develop common standards, rules, and procedures for compliance." § 1605(a)(1). Pursuant to this provision, they have issued a document entitled *Lobby[ing] Disclosure Act Guidance*, which is available at:

http://www.senate.gov/legislative/resources/pdf/S1guidance.pdf. However, the first

---

[1]     All statutory citations are to Title 2 of the United States Code ("Code") unless otherwise noted. A version of the Code in which the Amendments have been integrated into the Lobbying Disclosure Act of 1995 can be found at: http://www.senate.gov/legislative/Lobbying/Lobby_Disclosure_Act/compilation.pdf.

section of that document correctly states that the Act "does not provide the Secretary or the Clerk with the authority to write substantive regulations or issue definitive opinions on the interpretation of the law," and that the "guidance document does not have the force of law, nor does it have any binding effect on the United States Attorney for the District of Columbia." *Id.* at 1. This lengthy guidance document serves to confirm the vagueness and lack of tailoring of the challenged provision as further alleged below.

### The Challenged Provision

8. Professing concern that so-called "stealth coalitions" lobby on behalf of undisclosed or deceptively-identified interests, Congress adopted § 207 of the Amendments that, if read literally, would require Plaintiff and similar long-standing, well-known organizations that petition the federal government for their members to publicly identify their organizational supporters in violation of the First Amendment.

9. As enacted, the Amendments require organizations like the NAM to file public registration and disclosure statements with the Secretary of the Senate and the Clerk of the House, § 1603(a), and to update such disclosures quarterly, § 1604(a), (b)(1). In addition to identifying certain general information about the organization and its lobbying activities, § 207 requires disclosure of the "name, address, and principal place of business" of any organization, other than an individual, that "(A) contributes more than $5,000 to the [reporting organization] in the quarterly period to fund the lobbying activities of the registrant; and (B) actively participates in the planning, supervision, or control of such lobbying activities." §§ 1603, 1604.

10. The phrase "lobbying activities" is broadly and vaguely defined to encompass "lobbying contacts and efforts in support of such contacts, including preparation and planning activities, research and other background work that is intended, at the time it is performed, for use in contacts, and coordination with the lobbying activities of others." § 1602(7). A "lobbying contact" means any of a wide range of communications with Members and employees of the Senate or House of Representatives, § 1602(4), or with senior employees or officers of the Executive Branch, § 1602(3).

11. Actual or perceived violations of the amended Act may have serious adverse consequences, up to and including "a civil fine of not more than $200,000," or a criminal fine or "imprison[ment] for not more than 5 years," or both. §1606. Moreover, accusations of non-compliance, particularly from the Defendants, may have other, very serious repercussions.

12. Early in 2007, Senator Reid introduced the legislation (S. 1) that ultimately led to the disclosure provision described in the preceding paragraphs. At that time, Senator Lieberman noted that the purpose of the legislation's disclosure provision was to:

> [R]emove the cloak obscuring so-called stealth lobbying
> campaigns which occur when a group of individuals,
> companies, unions, or associations ban [*sic*] together to
> form a lobbying coalition. These coalitions frequently have
> innocent-sounding names that give the impression they are
> promoting positive mom-and-pop, apple pie goals. But, in
> fact, they lobby on a range of issues that could never be
> identified by the name of the coalition.

153 Cong. Rec. S260 (daily ed. Jan. 9, 2007) (statement of Sen. Lieberman).

13. This remained the sole stated purpose of the provision – to force disclosure of the interests behind lobbying coalitions whose interests cannot be identified. That same

purpose was reaffirmed in the legislative history accompanying the final version of the bill in the form of a detailed, written analysis "endorsed by the three principal Senate authors of the legislation: [Senator Feinstein], Chairman Lieberman, and Majority Leader Reid":

> This section amends existing rules…. The bill closes a loophole that has allowed so-called "stealth coalitions," often with innocuous-sounding names, to operate without identifying the interests engaged in the lobbying activities.

153 Cong. Rec. S10708-09 (daily ed. Aug. 2, 2007) (statement of Sen. Feinstein).

### Injury to the NAM and Its Members

14. The NAM has over 11,000 corporate members whose interests are allied with America's manufacturing sector. The NAM is a member-led organization, and its members participate in a number of committees and a wide range of related activities to define and advance the NAM's goals. Through their officers and employees, various members of the NAM attend approximately 100 meetings per month and engage in a wide range of other contacts and activities, including telephone calls, emails, and mailings that provide the opportunity for members to participate in the NAM's lobbying. Hundreds of the NAM's corporate members make annual contributions that, when allocated among the association's activities, meet the financial prong of the amended Act's disclosure obligations. (The actual number fluctuates depending on how the NAM directs its activities in a given year and the level of interest in particular activities.) Some of those members have dozens of employees who participate in various committees and other activities.

15.     Many of the NAM's activities involve, at some point, to some degree, and with more or less foreseeability, communicating with the federal government to advance and protect member interests. These activities include a large number of lobbying contacts with covered legislative or executive branch personnel at the federal level on a wide range of subjects. The NAM has approximately 35 employees who regularly engage in such contacts and whom it has identified in various filings since adoption of the Act in 1995. The NAM is well known to the public, the press, and to the elements of the federal government with which it deals.

16.     The NAM's lobbying activities often touch on hot-button topics such as global warming, nuclear power, or labor relations that provoke responses beyond civil debate. For example, anti-globalization forces have increasingly resorted to violent means to oppose both political leaders and officials in the private sector who support trans-national economic development. Similar consequences can result from being identified as actively opposing the core positions of organized labor. Taking policy positions that are unpopular with other groups may lead to boycotts, political pressure, shareholder suits, or other forms of harassment. In the legal realm, advocacy and involvement in connection with certain legislative issues (e.g., asbestos) can even make a company a litigation target.

17.     As a result of these consequences, members of the NAM will wish to avoid linkage to the association's lobbying activities on particular issues. However, given the ambiguous statutory language and the potential breadth of the disclosure requirements, the NAM is unable to provide clear guidance to its members as to what activities will or will not require public disclosure. What is more, since a non-disclosure violation may

have serious consequences, there is strong pressure for the NAM to over-report, thus increasing the risk to its members.

18.     In deciding whether public disclosure of a particular organization's name will be required, the NAM and similar groups must determine whether, in a given quarter, the member has "actively participat[ed]" in the "planning, supervision, or control," § 1603(b)(3)(B), of lobbying contacts and "efforts in support of such contacts, including preparation and planning activities, research and other background work that is intended, at the time it is performed, for use in contacts, and coordination with the lobbying activities of others." § 1602(7). The amended Act does not define the phrase "actively participates" or other key terms such as "planning activities, research and other background work," "in support of," or "coordination." Moreover, the provision's language encompasses activities at least twice removed from lobbying contacts, such as planning for planning activities for contacts. Indeed, it may be read to reach activities that are thrice removed – planning for planning for background research for contacts.

19.     Accordingly, those members that are concerned about the possibility of disclosure will limit their support for and participation in the NAM to the extent necessary to avoid the risk of being named in the NAM reports. For obvious reasons, the NAM is not naming specific members in this Complaint, but specific examples exist.

20.     At the associational level, member-driven organizations like the NAM suffer their own First Amendment injuries resulting from the potential application of § 207 to their lobbying activities and day-to-day operations. For organizations like the NAM that are democratic in governance and rely extensively on member volunteers, this vague and

sweeping requirement could mean almost anything and threatens otherwise confidential associational conduct. As a result, the NAM also must self-censor to avoid initiating lobbying activities that members will be unwilling to support at the risk of disclosure, or that may expose members to undesired disclosure.

21.    Thus, both the NAM and its organizational members must engage in self-censorship, prohibiting both the members and the NAM from engaging in a wide range of core First Amendment activities. Not only does this unjustifiable reporting obligation impair the First Amendment rights of the NAM, its members, and similar organizations, the disclosure requirements also deprive the speaker's intended audience of the benefit of a full and fair discourse on a variety of public policy issues.

22.    At the same time that the NAM is forced to curtail its First Amendment speech and petitioning activities, it is competing against organizations that, because they do not hire their own lobbyists and instead rely on activities by the lobbyists of member groups, are not required to register and disclose under the amended Act. § 1602(2) (defining a lobbyist's "client"); §§ 1603(a)(1) & (2), 1604(a), 1602(10) (requiring registration and reporting under the Act only if a lobbyist is "employed or retained by a client"). Such a structure readily can be employed by so-called stealth coalitions to defeat the professed objective of the Amendments. Similarly, wealthy and politically powerful individuals can be active in support of such groups without being disclosed. § 1603.

23.    Many other associations and groups share the general characteristics of the NAM described above, although each organization is unique in terms of both its membership and its policy objectives. Through its contacts with such groups, the NAM has

determined that confusion over the meaning of the Amendments is widespread, and that many members are seeking to ascertain whether their associational speech, petitioning, and similar activities will trigger the Act. Moreover, it is clear from public sources that such groups are spending large sums on legal and other advice in a vain attempt to determine what the Amendments mean, diverting resources that otherwise would be used for speech and petitioning. Until and unless legal relief is provided, attempts to interpret and apply the inherently vague and overbroad law will impose a continuing and substantial burden on and deterrent to such activity.

24. Importantly, this Complaint does not challenge the power of Congress to require some registration of professional lobbyists and disclosure of their clients through precise and narrowly-tailored provisions. The NAM has filed disclosures under the pre-2008 version of the Act and is willing to continue to do so. However, since coercing such disclosures substantially burdens fundamental First Amendment rights, such a law is subject to strict scrutiny and is invalid unless its defenders prove (1) it is narrowly tailored (2) to serve demonstrated, compelling needs and (3) is so precise in its terms that it can confidently be followed without any need to hedge, trim, or steer clear to avoid uncertain risks. In these respects the amended Act is deficient, both facially and as applied to the NAM and similar organizations.

## Violations Of The First Amendment

25. At its core, the First Amendment protects speech to and about government, petitioning government for redress of grievances, and associating for such purposes. Section 207 was enacted to directly regulate and restrict such core speech, petitioning,

and association and, indeed, to suppress speech and petitioning by so-called "stealth coalitions." The challenged provision also substantially burdens the exercise of core First Amendment rights by the NAM, its members, and similar organizations, and its vagueness exacerbates that burden. The amended Act expressly acknowledges that its provisions threaten First Amendment interests. § 1607(a).

26. The challenged provision thus is subject to strict judicial scrutiny and the burden is on the Defendants to justify it in all respects. The challenged provision is constitutionally defective, both on its face and as applied to the NAM and similar organizations, and Defendants cannot meet their burden of justification, because, among other things:

(a) The challenged provision does not provide a precise standard by which compliance obligations can be determined. Indeed, the NAM can only guess at what must be disclosed. Accordingly, it is unconstitutionally vague, both facially and as applied to the NAM, its members, and similar organizations.

(b) The challenged provision is not narrowly tailored to serve a sufficiently compelling governmental interest that cannot be adequately achieved by less burdensome means. A sufficiently compelling problem with lobbying by stealth organizations cannot be demonstrated, nor does the challenged provision – which exempts from disclosure individuals and stealth coalitions that do not employ lobbyists – meet any such interest in a narrowly-tailored manner. In any event, no compelling interest justifies demanding, burdensome, and intrusive disclosures by well-known, formally-organized, and established organizations like the NAM. The provision is both under- and over-inclusive.

Thus, it is invalid, both facially and as applied to the NAM, its members, and similar organizations.

(c) Substantially less restrictive and less burdensome alternatives were not explored by Congress, and Defendants cannot show that such alternatives are not available. For example, the law could distinguish between "stealth coalitions," which may manage to conceal or obscure the interests they represent for a time, from established organizations such as the NAM, that are formally and publicly incorporated, have a recognized federal tax status, publicly disclose the interests they represent, and whose common and established name adequately identifies those interests without any need for identification of particular members. The guidance document published by Defendants Erickson and Miller lacks the force of law and does not purport to cure the core deficiencies of the Act. However, to the extent that any of its language, if binding, would tend to reduce the severity of those defects, Defendants have not shown that the alternative of giving such language the force of law is not available. Indeed, Defendants cannot show that the 1995 version of the Act did not deal with "stealth coalitions" as well as the amended Act.

27. It would not suffice if Defendants could make the showings required by strict scrutiny, which they cannot. The Act flatly forbids construing any provision "to prohibit or interfere with – (1) the right to petition the Government for the redress of grievances; (2) the right to express a personal opinion; or (3) the right of association." § 1607(a). Yet the challenged provision facially interferes with such rights, as alleged above. The Act does not permit such interference, even if a sufficient showing of need and tailoring might justify the interference. Nor does the Act invite a reading that avoids such

interference. The challenged provision is in fatal tension with the plain language of § 1607(a), and as a result, the changes implemented by § 207 of the Amendments is self-negating and void, facially and as applied to the NAM and similar organizations.

**Need for Immediate Relief**

28.     The Amendments took effect on January 1, 2008. Under the amended Act, reports covering the first quarter of 2008 are due by April 21, 2008. § 1604(a). The NAM has members who are unwilling to be linked publicly to the NAM's lobbying activities and wish to preserve their right to anonymity under the First Amendment. Because the amended Act is so vague and broad, some of the NAM's members already are urgently questioning whether continued support for and participation in core petitioning, speech, and associational activities will require disclosure. That number will increase if prompt relief is not granted here.

29.     The NAM has no existing mechanisms to track and identify members who would be subject to disclosure if the Act could be understood, and creating such mechanisms would be disruptive of, and irreparably consume resources intended for, core First Amendment activities. Attempting to establish such mechanisms would disrupt expressive associational activities and divert unrecoverable resources from core First Amendment activities. In short, the amended Act substantially burdens the core First Amendment rights of the NAM and its members, causing irreparable injury as a matter of law.

## Request for Relief

**FOR THESE REASONS,** the NAM asks this Court for all appropriate relief, including a declaratory judgment invalidating application of § 207 of the Amendments to the NAM and similar organizations, preliminary and permanent injunctive relief, costs, and attorney's fees.

February 6, 2008

Respectfully submitted,

Thomas W. Kirby  (Bar No. 915231)
   E-mail: tkirby@wileyrein.com
Jan Witold Baran  (Bar No. 233486)
   E-mail: jbaran@wileyrein.com
Andrew G. Woodson  (Bar No. 494062)
   E-mail: awoodson@wileyrein.com
WILEY REIN LLP
1776 K St., NW
Washington, D.C. 20006

202.719.7000

Counsel for Plaintiffs

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

National Association of Manufacturers

110 cl

## DEFENDANTS

Honorable Jeffrey A. Taylor, U.S. Attorney for the District of Columbia
Honorable Nancy Erickson, Secretary of the United States Senate
Honorable Lorraine C. Miller, Clerk of the U.S. House of Representatives

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  11001
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Thomas W. Kirby
Jan Witold Baran
Andrew G. Woodson
Wiley Rein LLP
1776 K Street, NW
Washington, D.C. 20006
(202) 719-7000

ATTORNEYS (IF KNOWN)

Case: 1:08-cv-00208
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 2/6/2008
Description: TRO/PI

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S. Government Not a Party)
⊗ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ● D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)  OR  ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 USC 2201 & 2202 (declaratory and injunctive relief), 1331 (federal question), 1343 (civil rights). Action to vindicate First Amendment rights.

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ _____  Check YES only if demanded in complaint  JURY DEMAND:  YES ☐  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE Feb. 5, 2008    SIGNATURE OF ATTORNEY OF RECORD _____

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.