**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
NATIONAL ASSOCIATION OF          :
MANUFACTURERS,                    :
                                  :
            Plaintiff,            :
                                  :
                                  :
      v.                          :        Civil Action No. 1:08-cv-00208-CKK
                                  :
HONORABLE JEFFREY A. TAYLOR,      :
et al.,                           :
                                  :
            Defendants.           :
_____:


**UNOPPOSED MOTION OF CITIZENS FOR RESPONSIBILITY AND ETHICS IN**
**WASHINGTON FOR LEAVE TO FILE BRIEF AS AMICUS CURIAE AND**
<u>**SUPPORTING MEMORANDUM**</u>

Citizens for Responsibility and Ethics in Washington ("CREW"), moves leave to file a

brief as amicus curiae supporting the defendants in the above-captioned matter.

CREW is a non-profit organization under section 501(c)(3) of the Internal Revenue Code.

Through a combination of research, advocacy, public education and litigation, CREW seeks to

protect the rights of citizens to be informed about the activities of government officials and to

ensure the integrity of those officials. Among its principle activities, CREW monitors the

relationship of public officials with those who have interests before the government.

Recent congressional corruption scandals have highlighted the sometimes unethical

activities of some of those who lobby members of Congress. Lobbyists' ability to shield some of

their lobbying activities from disclosure contributed to these scandals. CREW believes that

transparency helps increase public confidence in Congress and ensures that government officials

act in accordance with the common good.  Toward that end, CREW seeks to file a brief in this action in support of the Honest Leadership and Open Government Act of 2007, which is aimed at curbing both actual undue influence by lobbyists and the appearance of such undue influence.

Counsel for amicus curiae notified counsel for plaintiff and counsel for the defendants regarding this motion, by telephone, on February 25, 2008.  Counsel for defendants stated that they do not oppose the instant motion.  Counsel for plaintiff has stated that plaintiff does not oppose the instant motion, "provided the brief is served electronically on the date set for the Defendants' oppositions."  Counsel for plaintiff reserves "any objections that may arise from [CREW's] proposed brief."

## CONCLUSION

For the foregoing reasons, CREW respectfully requests that this motion be granted and that it be permitted to file the attached brief as amicus curiae.

Dated: February 29, 2008

Respectfully submitted,

_____/s/_____
MELANIE SLOAN
D.C. Bar # 434584
ANNE L. WEISMANN
D.C. Bar # 298190
WILLIAM C. HOLMES
D.C. Bar # 495186
Citizens for Responsibility and
Ethics in Washington
1400 Eye Street, NW; Suite 450
Washington, D.C.  20005
Tel: (202) 408-5565

Counsel for Amicus Curiae

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF MANUFACTURERS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | Civil Action No. 1:08-cv-00208-CKK |
| | : | |
| HONORABLE JEFFREY A. TAYLOR, et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

**BRIEF AMICUS CURIAE OF CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON IN SUPPORT OF THE DEFENDANTS**

**INTEREST OF PROPOSED AMICUS**

Citizens for Responsibility and Ethics in Washington ("CREW") is a non-profit

organization under section 501(c)(3) of the Internal Revenue Code.  Through a combination of

research, advocacy, public education and litigation, CREW seeks to protect the rights of citizens

to be informed about the activities of government officials and to ensure the integrity of those

officials.  Among its principle activities, CREW monitors the relationship of public officials with

those who have interests before the government.

Recent congressional corruption scandals have highlighted the sometimes unethical

activities of some of those who lobby members of Congress.  Lobbyists' ability to shield some of

their lobbying activities from disclosure has contributed to these scandals.  CREW believes that

transparency helps increase public confidence in Congress and ensures that government officials

act in accordance with the common good.  Toward that end, CREW files its brief to support the

government's efforts to curb both actual undue influence by lobbyists and the appearance of such undue influence.

## STATEMENT

Plaintiff National Association of Manufacturers ("NAM") challenges the constitutionality of a lobbying regulation enacted by Congress as part of the Honest Leadership and Open Government Act of 2007 ("HLOGA"). Section 207 of HLOGA imposes a new disclosure requirement that applies where lobbyists are hired by coalitions and associations to pursue the interests of association members[1] before executive and legislative branch officials. Pub. L. No. 110-81, 121 Stat. 735, 747 (2007), § 207 ("Disclosure of Lobbying Activities by Certain Coalitions and Associations"). Specifically, where such a coalition or association hires an outside lobbyist, HLOGA section 207 requires the lobbyist to disclose the identity of any association member that 1) contributes $5,000 or more toward the lobbyist's activities during a quarterly period, Pub. L. No. 110-81, 121 Stat. 735, 747, § 207(a)(1)(A), and, 2) "actively participates" in the planning, supervision, or control of the lobbyist's activities. Id, § 207(a)(1)(B).[2] NAM challenges HLOGA section 207(a)(1)(B) as overbroad and claims the required disclosures will infringe on the First Amendment interests of its members.

To the contrary, as Supreme Court precedent makes clear, HLOGA is a lawful exercise of Congress' authority that is amply justified by the compelling public interest in governmental

---

[1] The scope of HLOGA Section 207 subsumes both "members [and] *contributors*" of lobbying coalitions and associations, see Pub. L. No. 110-81, 121 Stat. 735, 747, § 207(b) (emphasis added), but for briefing purposes, CREW employs here the shorthand term "members."

[2] If the coalition or association itself employs one or more in-house lobbyists, the coalition or association is subject to identical disclosure requirements as described at Pub. L. No. 110-81 § 207(a)(1), as apply to outside lobbyists. See 2 U.S.C. § 1603(a)(2).

transparency that the statute advances.  Nor is HLOGA overbroad, particularly in light of the

highly specific and detailed compliance guidance that the Secretary of the Senate and the House

Clerk have issued.

Indeed, the challenged provision is merely an incremental change in a statutory scheme

that already imposes federal lobbying disclosure requirements on a variety of entities,

requirements that NAM has not challenged.  Section 207(a)(1)(B) of HLOGA simply broadens

the ambit of organizations already subject to mandatory federal lobbying disclosure requirements

to include entities that "actively participate in the planning, supervision, or control" of "lobbying

contacts."[3]  NAM does not challenge the lobbying disclosure requirements imposed by the

Lobbying Disclosure Act of 1995 or the pre-HLOGA content of 2 U.S.C. § 1603(b)(3), which

had already required disclosure of entities that "plan, supervise, or control" lobbying activity.

Those organizations newly subject to reporting requirements by virtue of HLOGA also

have an alternative means of securing compliance with the Act.  The identity of such

organizations need not be disclosed pursuant to HLOGA section 207 if the website of the parent

association identifies the organization's status as a member of or contributor to the association.

Pub. L. No. 110-81, 121 Stat. 735, 747, § 207(b) ("No disclosure is required under [2 U.S.C. §

1603](b)(3) if the organization that would be identified as affiliated with the [lobbyist's] client is

listed on the client's publicly accessible website as being a member of or contributor to the

---

[3] Separately, section 207(a)(1)(A) of HLOGA narrows the time period (from six months to three
months) during which organizations are subject to the minimum monetary contribution threshold
that triggers the reporting requirement under 2 U.S.C. § 1603(b)(3)(A). Compare 2 U.S.C. §
1603(b)(3)(A) (2006) (minimum threshold contribution of $10,000 in the bi-annual period during
which the covered lobbying activity takes place) with 2 U.S.C. § 1603(b)(3)(A) (2008)
(minimum threshold contribution of $5,000 in the quarter during which the covered lobbying
activity takes place).

client."). Under these circumstances, NAM's constitutional challenge must fail as a matter of fact and law.

## ARGUMENT

### I. SECTION 207 OF HLOGA IS CONSTITUTIONAL.

Prior caselaw compels the conclusion that Section 207(a) of HLOGA, which specifically requires the identification of parties that "actively participate in the planning, supervision, or control of" regulated lobbying activities, Pub. L. No. 110-81 § 207(a), is constitutional. The most recent Supreme Court case examining a similar lobbying regulation, U.S. v. Harriss, 347 U.S. 612 (1954), makes clear that because of the "vital" public interest in open and transparent government, lobbying disclosure regulations enacted to further such interest are not to be overturned lightly.

In Harriss, the Supreme Court considered a constitutional challenge to the Federal Regulation of Lobbying Act of 1946 ("FLRA").[4] Among its provisions, the FRLA required federal lobbyists to register with Congress and to make various disclosures, including the disclosure of "by whom he [each lobbyist] is paid or is to be paid." Harriss at 615 n.2. Lobbyists were further required under the FLRA to supply a "detailed report under oath of all money received." Id. The Supreme Court upheld both lobbying disclosure provisions in full, stating that "Congress . . . is not constitutionally forbidden to require the disclosure of lobbying activities." Id. at 625. Although the Court limited the range of lobbying contacts to which the FLRA's lobbying disclosure provisions applied, it upheld the disclosure provisions themselves in

---

[4] The FLRA was the predecessor statute to the Lobbying Disclosure Act of 1995 ("LDA"); the LDA repealed the FLRA. Pub. L. No. 104-65, 109 Stat. 691 (1995).

full. Id. at 620, 625.

The Supreme Court in Harriss was "not explicit about the level of constitutional scrutiny applied" in evaluating the constitutionality of the FLRA, Florida League of Prof'l Lobbyists, Inc. v. Meggs, 87 F.3d 457, 460 (11th Cir. 1996). More recently, the Court has applied a strict scrutiny standard of review to speech by corporations intended to influence public opinion on voter ballot initiatives[5] -- a type of speech that the Court has termed "corporate issue advocacy." Fed. Election Comm'n v. Wisconsin Right to Life, Inc., 127 S. Ct. 2652, 2673, 551 U.S. __ (2007) ("WRTL"). Here NAM has referred to the speech it is trying to protect as "policy speech,"[6] an otherwise undefined term that CREW construes as corporate issue advocacy.[7]

Where strict scrutiny applies, the government must demonstrate that the challenged restriction on speech furthers a compelling interest and is narrowly tailored to achieve that interest. WRTL, 127 S. Ct. at 2664 (citation omitted). Here, regardless of whether strict scrutiny or a lesser level of scrutiny is applied to evaluate the constitutionality of HLOGA section 207, Congress' selected means of advancing open government are wholly permissible under the First Amendment.

─────────────────

[5] See First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 786 (1978).

[6] NAM Br. at 17.

[7] It is not entirely clear that the Supreme Court would construe speech by NAM's lobbyists as "corporate issue advocacy." The Court in Harriss did not define speech by lobbyists as falling into any broader category of speech commonly recognized under more recent Supreme Court First Amendment cases, such as "political speech" (McConnell v. FEC, 540 U.S. 93, 138 (2003)), "commercial speech"(Cent. Hudson Gas Elec. Corp. v. Pub. Serv. Comm'n of New York, 447 U.S. 557, 564 (1980)), or "corporate issue advocacy" (Buckley v. Am Constitutional Law Found., 525 U.S. 182, 186 (1999)). Nor did the Court in Harriss employ NAM's term of "policy speech."

HLOGA Section 207 was enacted to pierce the veil of secrecy surrounding coalitions and trade associations and the organizations associated with them that participate in "active lobbying." As Congressman Lloyd Doggett explained, speaking on the floor of the House in favor of HLOGA, section 207 was necessary because "[o]f course, [as] President Harry Truman said, 'The buck stops here.' But with stealth lobbying we don't know where 'here' is or whose buck it is." 153 Cong. Rec. H5743 (May 24, 2007).[8] The preamble to HLOGA echoes that its intent is "to provide greater transparency in the legislative process." Pub. L. No. 110-81, 121 Stat. 735 (Sept. 14, 2007).

The interest in open government advanced by section 207 is analogous to the interest advanced by the FLRA, the statute at issue in Harriss, and the disclosure requirement that section 207 imposes presents no greater risk of harm than that asserted by the plaintiff in Harriss.[9] Both statutes are justified by a "vital" interest, which the Harriss Court described as follows:

> Present-day legislative complexities are such that individual members of Congress cannot be expected to explore the myriad pressures to which they are regularly subjected. Yet full realization of the American ideal of government by elected representatives depends to no small extent on their ability to properly evaluate such pressures. Otherwise the voice of the people may all too easily be

---

[8] See also 153 Cong. Rec. S10708-09 (daily ed. Aug. 2, 2007) (statement of Senator Dianne Feinstein, one of the co-sponsors of HLOGA) (section 207 "closes a loophole [in existing law] that allow[s] so-called 'stealth coalitions,' often with innocuous-sounding names, to operate without identifying the interests engaged in the lobbying activities.").

[9] The Harriss Court, in fact, rejected the "hypothetical borderline situations" that were "conjured up" by the Harriss plaintiffs under "which [donors to lobbyists may] choose to remain silent" pursuant to the disclosure provisions of the FLRA. 347 U.S. at 626. The hypothetical prospective harm NAM alleges its members will suffer -- that they "will limit their support for and participation in the NAM" (NAM Br. at 13) -- offers no greater ground for relief under the First Amendment.

> drowned out by the voice of special interest groups seeking favored
> treatment while masquerading as proponents of the public weal . . .
> Congress has not sought to prohibit these pressures.  It has merely
> provided for a modicum of information  ...It wants to know who is
> being hired, who is putting up the money, and how much.

Harriss, 347 U.S. at 625.[10]  Few would argue that the legislative "complexities" faced by the

110th Congress are less intricate than those faced by the 79th Congress that passed the FLRA.

HLOGA section 207 advances the same ends as the FLRA-- determining "who is being hired,

who is putting up the money, and how much"-- in a fashion tailored to the circumstances of a

more complex era.  Like the lobbyist donor disclosure provisions at issue in Harriss, the

organizational disclosure provisions in HLOGA ensure that elected representatives can "properly

evaluate [lobbying] pressures," Harriss, at 625, and "provide greater transparency in the

legislative process."  Pub. L. No. 110-81, 121 Stat. 735.

        Since Harriss, the Supreme Court has considered and upheld the constitutionality of a

range of federal laws requiring disclosure of the sources of political speech.  The seminal post-

Harriss case in which the Court weighed a First Amendment challenge to a regulation mandating

disclosure of the sources of political speech is Buckley v. Valeo. 424 U.S. 1 (1975), in which the

Supreme Court evaluated First Amendment objections to various provisions of the Federal

Election Campaign Act of 1971, as amended in 1974 ("FECA").  Among the challenged

provisions was FECA's requirement that political committees file quarterly reports with the

Federal Election Commission disclosing the source of all campaign contributions exceeding

---

[10] See also McConnell v. FEC, 540 U.S. 93, 150 (2003) ("our cases have firmly established that
Congress' legitimate interest extends beyond preventing simple cash-for-votes corruption to
curbing...the appearance of ['undue influence']" on officeholders' judgment).

$100.[11] In upholding the constitutionality of FECA's disclosure provision, the Court concluded "the burden imposed by [such requirement] is . . . reasonable and minimally restrictive method of furthering First Amendment values by opening the basic processes of our federal election system to public view." 424 U.S. at 82.

The Court's decision in Buckley compelled a similar outcome in McConnell v. FEC, 540 U.S. 93 (2003), in which the Supreme Court considered a challenge to several provisions of the Bipartisan Campaign Reform Act of 2002 ("BCRA"). The challenged provisions included a requirement that organizations disclose the names of all donors of $1,000 or more for advertisements that: 1) clearly identified a candidate for federal office; 2) aired within a specific time period prior to an election; and 3) targeted an identified audience of at least 50,000 viewers or listeners. 540 U.S. at 194. Relying directly on Buckley, the Court rejected the constitutional challenges to these provisions. Id. at 196. The Court agreed with the district court that striking down the disclosure provisions at issue would "not reinforce the precious First Amendment values that Plaintiffs argue are trampled by BCRA, but [rather would] ignore the competing First Amendment interests of individual citizens seeking to make informed choices in the political marketplace." McConnell, 540 U.S. at 195 n.80 (citations omitted). As Harriss makes clear, the interest of the public and elected officials in making informed policy choices predicated on full disclosure of the sources of lobbying speech is an interest no less vital than those protected under the BCRA per McConnell.

The Supreme Court has also upheld the propriety of regulations mandating disclosure in

---

[11] Under current law, the sources for all contributions over $200 must be disclosed. 2 U.S.C. § 434(b)(3)(A).

other contexts involving political speech.  In <u>Buckley v. Am. Constitutional Law Found.</u>, the Court rejected a challenge to regulations requiring the disclosure of the identities of those who contribute funds spent to pass or defeat ballot measures.  525 U.S. 182 (1999).  Specifically, the Supreme Court upheld a Colorado law requiring "sponsors of ballot initiatives to disclose who pays petition circulators, and how much." <u>Id.</u> at 205.  The Colorado law imposed "requirements for disclosure of payors [who pay circulators of petitions to secure the appearance of measures on ballots], in particular, proponents' names and the total amount they have spent to collect signatures for their petitions." <u>Id.</u> at 201.  <u>Cf.</u> <u>Bellotti</u>, 435 U.S. at 792 n.32 ("we emphasized in <u>Buckley</u> the prophylactic effect of requiring that the source of communication be disclosed.").

Since <u>Harriss</u>, appellate courts have also consistently affirmed the propriety of lobbying disclosure and registration strictures -- similar to those in HLOGA -- enacted to further the public interest in government transparency.  In upholding these provisions, the courts have rejected petitions to invalidate such statutes on First Amendment grounds such as those advanced by NAM here.

For example, NAM argues that the "expressive and associational activities," "associational privacy," and the right of "free cooperation" of its members will be threatened by section 207 of HLOGA.  NAM Br. at 20-21.  The Eighth Circuit considered and rejected a similar argument when it upheld the constitutionality of a state-imposed lobbying registration regime against a First Amendment challenge in <u>Minnesota State Ethical Practices Board v. Nat'l Rifle Ass'n</u>, 761 F.2d 509 (8th Cir. 1985) ("<u>MSEP</u>").  At issue in <u>MSEP</u> was the constitutionality of a Minnesota state lobbying statute that required any individual who "spen[t] more than $250" in a given year "for the purpose of attempting to influence legislative or administrative action," to

9

register with the state as a lobbyist. <u>MSEP</u>, 761 F.2d at 510. An NRA employee sent mailings to over 54,000 NRA members in Minnesota urging them to contact their state legislators in support of three pending bills. <u>Id.</u> at 511. The NRA argued that the requirement that the NRA employee register as a lobbyist inhibited the NRA's members "from exercising their First Amendment right of association" and violated the right of NRA's leadership to "communicat[e] with its own members." <u>Id.</u>

The Eighth Circuit rejected these arguments and upheld the constitutionality of the statute as applied. Citing <u>Harriss</u> and <u>Buckley v. Valeo</u>, the court stated, "we conclude that the constitutionality of this legislation is not affected by the fact that it has been applied to communications between the members of an association." <u>Id.</u> at 513. In so holding, the court accorded due weight to the state's "interest in disclosure," concluding that such interest "outweigh[ed] any infringement of appellants' [F]irst [A]mendment rights." <u>Id.</u> at 512.

Likewise, the Eleventh Circuit rejected the challenge of an association of lobbyists to lobbyist disclosure requirements imposed by a Florida state statute in <u>Florida League of Prof'l Lobbyists, Inc. v. Meggs</u>, 87 F.3d 457, 460 (11th Cir. 1996). The Florida statute required that state-registered lobbyists disclose all "lobbying expenditures" and "the source of funds for all such expenditures." <u>Id.</u> at 458. The association of lobbyists challenged the statute as overbroad and facially invalid under the First Amendment. <u>Id.</u> at 459. In dismissing this challenge, the court held, "the First Amendment permits required reporting of considerably more than face-to-face contact with government officials," reasoning that "the burdens of . . . disclosure . . . do not

substantially interfere with the ability of the lobbyist to raise his voice." Id. at 460, 461.[12]

Under the weight of this clear and consistent authority, the government is to be accorded great deference in fashioning laws intended to identify those who seek to influence policy decisions, in light of the inherently compelling nature of the public interest in promoting transparency in government. Properly accounting for such due deference here, it is clear that Congress' selected method of furthering transparency in government through section 207 of HLOGA easily withstands First Amendment scrutiny. Through HLOGA, Congress has crafted legislation to solve the problem identified by Congressman Doggett -- the problem that, "with stealth lobbying," in contradistinction to President Truman's "buck stops here" maxim, "we don't know where 'here' is or whose buck it is."

## II. SECTION 207 OF HLOGA IS NOT FATALLY VAGUE.

NAM's argument that section 207 of HLOGA is fatally vague is also without merit. The Secretary of the Senate and the Clerk of the House of Representatives have issued guidance interpreting section 207(a)(1)(B), see Lobby Disclosure Act Guidance effective January 1, 2008 (revised January 25, 2008) ("*Guidance of the Secretary and Clerk*"), *available at* http://www.senate.gov/legislative/resources/pdf/S1guidance.pdf (last visited Feb. 12, 2008), that cures any alleged vagueness. NAM dismisses any ameliatory effect of this guidance, claiming that the guidance merely "serves to confirm the vagueness and lack of tailoring of the Amended Act." See NAM Brief at 6, n.2. That guidance may be called for, however, does not render

---

[12] Federal district courts have reached similar conclusions. Florida Ass'n of Prof'l Lobbyists, Inc. v. Div'n of Legislative Information Services, 06cv123 (N.D. Fla. Dec. 28, 2006); Comm'n on Indep. Colleges v. New York Temporary State Comm'n, 534 F.Supp. 489 (N.D.N.Y. 1982); ACLU v. New Jersey Election Law Enforcement Comm'n, 509 F.Supp. 1123 (D.N.J. 1981).

unconstitutional the legislation that it clarifies.  Moreover, even if the interpretive guidance that

defendants have promulgated were properly deemed insufficient -- which it is not-- the solution

would be supplemental guidance, not invalidation of section 207 on First Amendment grounds.

The Secretary of the Senate and the Clerk of the House of Representatives supply

guidance to members of the public in interpreting the lobbying regulation statutes codified at

2 U.S.C. §§ 1601-1612 pursuant to 2 U.S.C. § 1605(1), which directs the Secretary and the Clerk

to "provide guidance and assistance on the registration and reporting requirements of this chapter

and develop common standards, rules, and procedures for compliance with this chapter."  The

written guidance that the Senate Secretary and the House Clerk have issued, as recently as

January 25, 2008, includes an interpretation of the phrase "actively participates" as employed in

HLOGA section 207.  See Guidance of the Secretary and Clerk, at pp. 4, 12, 13.  The guidance

includes numerous detailed hypothetical examples explaining the circumstances under which an

organization would be deemed to have "actively participated" in the "planning, supervision, or

control" of outside lobbying activities undertaken at the behest of a parent coalition or

association.  Id.

The Senate Secretary and House Clerk are "vested" by statute with the authority to issue

"advisory opinions."  William V. Luneburg and Thomas M. Susman, *The Lobbying Manual* (3d

ed. 2005), at 156 (*citing* 2 U.S.C. § 1605(1)).  Courts have long recognized that private parties'

reliance on advisory opinions issued by governmental agencies entrusted by law to issue such

opinions is far preferable to outright judicial invalidation of a federal statute. See, e.g., Nat'l

Treasury Employees Union v. Fed. Labor Relations Auth., 957 F.2d 912 (D.C. Cir. 1992) (*citing*

5 U.S.C. § 7105(I), which authorized the Federal Labor Relations Authority to request advisory

opinions from the Director of the Office of Personnel Management regarding "the proper interpretation of rules, regulations, or policy directives issued by the Office of Personnel Management in connection with any matter before the Authority."). Here, too, NAM may request that the Clerk and the Secretary clarify any existing guidance NAM claims is vague, and the availability of this relief fatally undermines NAM's void for vagueness argument.

Under analogous circumstances, the D.C. Circuit, relying on Supreme Court precedent, has recognized that guidance proffered by individual agencies concerning the meaning of statutes they are entrusted to enforce, where issued "informally" and "without notice-and-comment rulemaking," is entitled to "deference equal to its power to persuade." Brown v. U.S., 327 F.3d 1198, 1205 (D.C. Cir. 2003) (citing Christensen v. Harris County, 529 U.S. 576, 587 (2000) and Skidmore v. Swift & Co., 323 U.S. 134, 139 (1944), and finding that a methodology devised by the Treasury Department to calculate lump sum back payments owed to retired Secret Service agents, where "promulgated informally during the course of litigation" to "fill a gap" in a clause of the District of Columbia Police and Firefighters Retirement and Disability Act (DCRA) and to "resolv[e] any ambiguity arising from the confluence of the DCRA and the Federal Law Enforcement Pay Reform Act," represented a "persuasive solution" to the problems raised by the statutory "gap" and the statutory "confluence," and was therefore entitled to deference). A wide range of agencies issue such statutory interpretive guidance with relative frequency, including the Internal Revenue Service[13] and the Department of Health and Human Services.[14]

---

[13] The IRS frequently issues revenue rulings. See http://www.irs.gov/retirement/content/0,,id=96685,00.html (stating that a revenue ruling "is an official interpretation by the [IRS] of the Internal Revenue Code, related statutes, tax treaties, and regulations"); Del Commercial Properties, Inc. v. Commissioner Of Internal Revenue Service, 957 F.2d 912 (D.C. Cir. 1992) ("[IRS revenue] rulings…are 'entitled to respect' to the extent

Similarly, the Office of the House Clerk and the Office of the Senate Secretary, like the Treasury Department in Brown, are simply supplying reasoned interpretation of a federal statute. The existing guidance that the Clerk and Secretary have already issued more than adequately cures any alleged vagueness problem with HLOGA section 207. The fact that NAM, or any other putative plaintiff, may not agree with the substance of this guidance does not render section 207 unconstitutionally vague.

As a last, and preferable, alternative to invalidating HLOGA section 207, this Court may itself interpret section 207 in a manner that cures any alleged ambiguities. Courts are tasked with construing statutes "to avoid the shoals of vagueness" if it "can be done consistent with the legislature's purpose." McConnell, 540 U.S. at 191. See also Harriss, 347 U.S. at 618 n.6 ("this Court, if fairly possible, must construe congressional enactments so as to avoid a danger of unconstitutionality."). Should the Court deem it necessary to graft any judicial gloss on section 207, the existing guidance heretofore supplied by the Secretary and the Clerk offers a wealth of interpretive material.

---

they 'have the power to persuade'").

[14] See, e.g., http://www.aamc.org/advocacy/library/teachphys/corres/2002/030502.htm (describing "a memorandum dated February 3, 1998 and signed by Charles R. Booth, [Health and Human Services Center for Medicare and Medicaid Services] and sent to [Associate Regional Administrators] for Financial Management, Regions I – VI, VIII-X, and ARA for Beneficiary Services, Region VII," that interpreted a section of the Social Security Act, 42 U.S.C. § 1395ww).

**CONCLUSION**

For all of the foregoing reasons, the Court should uphold the constitutionality of section

207 of the Honest Leadership and Open Government Act.

Respectfully submitted,

_____/s/_____
MELANIE SLOAN
D.C. Bar # 434584
ANNE L. WEISMANN
D.C. Bar # 298190
WILLIAM C. HOLMES
D.C. Bar # 495186
Citizens for Responsibility and
Ethics in Washington
1400 Eye Street, NW; Suite 450
Washington, D.C.  20005
Tel: (202) 408-5565

Counsel for Amicus Curiae

## CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2008, the foregoing:

### MOTION FOR LEAVE TO FILE BRIEF AS AMICUS CURIAE

### and BRIEF AMICUS CURIAE

were filed electronically with the Clerk of the Court via email to the email address

dcd_cmecf@dcd.uscourts.gov.

I further hereby certify that on this same date, electronic service of the foregoing Motion

and Brief shall be effected upon the following:

> Thomas W. Kirby
> Wiley Rein LLP
> 1776 K St., NW
> Washington, D.C. 20006
> 202-719-7000
> TKirby@wileyrein.com
> Counsel for Plaintiff

I further hereby certify that on this same date, hand service of the foregoing Motion and

Brief shall be effected upon the following:

> Theodore C. Hirt
> U.S. Department of Justice
> 20 Massachusetts Avenue, N.W.
> Room 7106
> Washington, DC 20530
> Counsel for Defendants

February 29, 2008                                    _____/s/_____
Date                                                 WILLIAM C. HOLMES
                                                     Citizens for Responsibility and
                                                     Ethics in Washington
                                                     1400 Eye Street, NW; Suite 450
                                                     Washington, D.C. 20005
                                                     Tel: (202) 408-5565

                                                     Counsel for Amicus Curiae