UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF MANUFACTURERS, <br><br> Plaintiff, <br><br> v. <br><br> HONORABLE JEFFREY A. TAYLOR, et al. <br><br> Defendants. | Case No. 08-cv-00208 (CKK) |

**PLAINTIFF NAM'S MOTION FOR A STAY AND
AN INJUNCTION PENDING APPEAL**

Plaintiff National Association of Manufacturers ("NAM") respectfully requests this court to issue a stay and injunction barring Defendants from implementing or enforcing § 207 of the Honest Leadership and Open Government Act of 2007, Pub. L. No. 110-81, 121 Stat. 735 ("Amendments") pending Plaintiff's appeal of this Court's April 11, 2008, order and accompanying memorandum opinion ("Opinion"). A notice of appeal will be filed shortly.

**Legal Standard**

The test for "a stay or injunction pending appeal is essentially the same" as the test for a preliminary injunction. *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 193 & n.5 (D.D.C. 2005). *See also Washington Metro Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842 n.1 (D.C. Cir. 1977) (noting that the same standards for obtaining a preliminary injunction apply to a motion for a stay of a district court's order pending appeal). Plaintiff must demonstrate (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable harm absent the relief requested; (3) that other

1

interested parties will not be harmed if the requested relief is granted; and (4) that the public interest supports granting the requested relief. *Id.* at 842-43; *Al-Anazi v. Bush*, 370 F. Supp. 2d at 193.  As noted recently by this Court in the context of granting the part of a motion for a stay pending appeal that involved a constitutional challenge to the disclosure of certain information,

> the D.C. Circuit has explained that the "substantial likelihood of success" prong does not necessarily imply that a party needs to demonstrate a 50% chance or better of prevailing on appeal. *Holiday Tours*, 559 F.2d at 844. Instead, the moving party can satisfy that element by raising a "serious legal question . . . whether or not [the] movant has shown a mathematical probability of success." *Id.*  Put another way, "it will ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Id.* (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir.1953)).

*Jewish War Veterans v. Gates*, 522 F. Supp. 2d 73, 76 (D.D.C. 2007).  *See also People for the American Way Foundation v. U.S. Dep't of Ed.*, 518 F. Supp. 2d 174 (D.D.C. 2007) (discussing how relevant factors are balanced); *Center for Int'l Envtl. Law*, 240 F. Supp. 2d 21, 24 (D.D.C. 2003) (granting relief because disclosure is irreparable).

**Argument**

In an earlier filing with this Court, the NAM articulated the compelling reasons favoring preliminary relief.  *See* Pl. Mem. at 15-32.  It incorporates that discussion here by reference.

The Court's 57-page Opinion clearly is the product of extensive work, and the NAM is not so bold as to request the Court to find it probably is wrong.  However, the opinion recognizes that the NAM has presented substantial issues calling for extended discussion.  After all, this is a case of first impression under a statute that so substantially

2

burdens First Amendment rights that the Court applied strict judicial scrutiny – a standard that seldom is met.[1]  The NAM implies no disrespect of this Court's efforts in suggesting that the challenged provision should receive some appellate review before its serious First Amendment burdens take effect.

The NAM believes that substantial appealable issues exist.  Without burdening the Court with re-argument, the following are examples of such issues:

- The Opinion recognizes that Section 207 was enacted to force disclosure of the membership of so-called "stealth coalitions."  However, because Section 207 applies only to organizations that hire lobbyists, it simply will not require disclosures by any coalition that chooses to operate through lobbyists employed or retained by one or more members.  The Opinion (at 35) says some disclosure will occur since disclosure will be required of the members whose lobbyists directly implement the effort.  But that disclosure will merely provide a general statement that the disclosing party included a general issue in the matters handled by its lobbyists.  There will be no mention of the coalition or its members, no matter how much funding they provide for all activities other than directly hiring a lobbyist.  Nor will the disclosure state that the reporting entity is part of the coalition.  Indeed, the same disclosure would occur under the prior disclosure provisions.  Thus, there is a substantial appellate question whether the government has shown that the heavy new burdens on

---

[1]    It is not merely that this is the first case under Section 207.  The U.S. Supreme Court has dealt with the general topic only once, in *Harriss v. United States*, 347 U.S. 612 (1954).  That case, as the Opinion notes, preceded the development of modern First Amendment standards and concerned a very different and much narrower statute, particularly after it was narrowed on due process grounds.

3

membership organizations like the NAM result in *any*, let alone material, advancement of the justifying interest, as strict scrutiny requires. Opinion at 27 (quoting *Blount v. SEC*, 61 F.3d 938, 944 (D.C. Cir. 1995)).

- Because "stealth coalitions" are relatively short-lived, ad hoc affairs, the burdens that Section 207 imposes on long-established groups such as the NAM are not narrowly tailored. The Opinion (at 39) said that, if long-established groups were exempted, stealth coalitions might usurp the identities of such organizations, noting that Congress had expressed concern about lobbying under misleading names. But there is a great difference between fabricating a misleading name and usurping the identity of an existing organization. No evidence was offered that Congress expected usurpation to occur or that Section 207 was intended to prevent it. The Opinion also said the public might want to know which members of long-standing groups were active in one or more of its lobbying efforts. But no evidence was offered that Congress crafted Section 207 to serve any such interest, much less that it was compelling with respect to established groups. There is a substantial appellate issue of narrow tailoring.

- The Opinion recognizes that, to decide which of its member corporations have "actively participated" in the broadly defined category of "lobbying activities" during a calendar quarter, the NAM will have to evaluate the activities of member employees in hundreds of meetings and communications. Among other things, it will have to determine whether

4

the intent of the organization at the time of each employee's act was to advance lobbying in a broad sense. The Opinion acknowledges that "intent" standards have been held impermissibly vague in some other First Amendment contexts.[2] It concludes that special circumstances here make the standard sufficiently precise and objective to give persons of ordinary intelligence fair notice of what is required. There is no direct supporting authority for that conclusion, however. Moreover, the First Amendment dictates that even greater clarity is required where, as here, the exercise of core rights may be chilled by the desire to steer clear of possible risk. Thus, this too is an issue on which an appellate court could reach a different judgment.

There is no significant reason to deny relief. Because this is a final judgment decided entirely as a matter of law, appellate review can be swiftly completed. If disclosures are ordered at the conclusion of the appeals process, then they can be made. On the other hand, disclosures, once made, cannot be undone, and membership cooperation and goodwill, once destroyed, cannot swiftly be restored. Thus, a relatively brief delay in disclosure can avoid permanent and irreparable injury to the core rights of the NAM and its members while advancing the strong public interest in protecting the First Amendment. A stay and injunction pending appeal should be granted.

---

[2] The Opinion focuses on *FEC v. Wisconsin Right to Life II*, 127 S. Ct. 2652 (2007), but does not note that *Buckley v. Valeo*, 424 U.S. 1 (1976), was equally clear in condemning statutes in which core speech may be punished based on a regulator's assessment of intent.

Pursuant to Local Rule 7(m), counsel for the Plaintiff have conferred by telephone with counsel for the Defendants, who oppose this motion.

Dated: April 14, 2008                                  Respectfully submitted,

_____/s/_____
Thomas W. Kirby  (Bar No. 915231)
    E-mail: tkirby@wileyrein.com
Jan Witold Baran  (Bar No. 233486)
    E-mail: jbaran@wileyrein.com
Andrew G. Woodson  (Bar No. 494062)
    E-mail: awoodson@wileyrein.com
WILEY REIN LLP
1776 K St., NW
Washington, D.C. 20006

202.719.7000

Counsel for Plaintiff