IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF MANUFACTURERS, <br><br> Plaintiff, <br><br> v. <br><br> HONORABLE JEFFREY A. TAYLOR, United States Attorney for the District of Columbia, et al., <br><br> Defendant. | Civil Action No. 08-208 (CKK) |

**OPPOSITION TO MOTION FOR A STAY AND AN INJUNCTION PENDING APPEAL**

**INTRODUCTION**

The Court should deny plaintiff's motion for a stay and an injunction pending appeal. Plaintiff NAM's Motion for a Stay and an Injunction Pending Appeal, April 14, 2008 ("Motion"), Doc. No. 20. Whether a stay or an injunction pending appeal is proper depends on a weighing of (i) plaintiff's likelihood of success on the merits on appeal, (ii) the balance of the harms between interested parties, and (iii) the public's interest in the granting or denial of the motion. In re Interested Party 1, 530 F. Supp 2d 136, 145 (D.D.C. 2008). Here, the scales tip heavily against plaintiff.

Plaintiff does not have a substantial likelihood of success on the merits: This Court has cogently explained the defects in plaintiff's arguments. Memorandum Opinion, April 11, 2008 ("Opinion"), Doc. No. 19. The balance of harms also militates strongly against denying plaintiff's motion. Members of Congress (and by extension, the public) have a strong interest in

understanding who stands behind the lobbying pressures they face on a daily basis (because this understanding facilitates their decision making process), and plaintiff's harm, i.e., the threat of reprisals faced by it and its publicly known members, is entirely conjectural (for plaintiff has not identified a single instance when it or one of its known members has been subject to a reprisal for plaintiff's lobbying activities).  United States Attorney Taylor's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Judgment as a Matter of Law, Feb. 29, 2008 ("Taylor Opp."), Doc. No. 12, at 10-11, 13.  Finally, the public interest weighs against plaintiff's motion, as the challenged statute, the Honest Leadership and Open Government Act of 2007 ("HLOGA"), Pub l. No. 110-81, 121 Stat. 735, both facilitates the operation of representative government, see United States v. Harriss, 347 U.S. 612, 625 (1954), and eliminates the appearance of corruption, see McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 356 n.20 (1995).

## ARGUMENT

### Merits-Related Arguments

By way of "example[ ]," plaintiff identifies three issues on which it believes it is substantially likely to succeed on appeal.[1]  Motion at 3-5.  First, plaintiff restates its argument that Section 207 of the HLOGA is underinclusive because it does not cover organizations that

---

[1] Plaintiff hints that the fact that the Court applied strict scrutiny, but sustained the statute, should give the Court pause because it is "a standard that seldom is met."  Motion at 3.  That assertion is misplaced.  As defendant Taylor noted in its brief, strict scrutiny is not a death sentence with respect to statutes that require disclosures in order to shed light on the operation of the political system, Taylor Opp. at 17 (collecting cases); the value of open government justifies reasonable and narrow speech restrictions.  Buckley v. Valeo, 424 U.S. 1, 66 (1976) ("There are governmental interests sufficiently important to outweigh the possibility of infringement, particularly when the free functioning of our national institutions is involved.").

use members' lobbyists. Id. at 3-4.  Second, plaintiff asserts that the statute is not narrowly tailored because Section 207 groups "long-established" organizations like NAM with the fly-by-night "stealth coalitions" that, plaintiff contends, are the real problem.  Id. at 4.  Finally, plaintiff revisits the argument that the statute is unconstitutionally vague because its operation turns, at least in part, on intent.  Id. at 5.

These examples demonstrate an overwhelming likelihood of failure, not success.  It is important to note as a threshold matter that the Court has already rejected all of these arguments; they did not escape the Court's attention in its thorough 57-page opinion.  Opinion at 34-35, 39-40; 47-52.  In any case, none of plaintiff's points is persuasive.  As the Court concluded, Section 207 is not underinclusive for not requiring new disclosures of groups that use members' lobbyists.  Id. at 34-35.  Groups that rely on their members' lobbyists are not "stealthy" in any meaningful sense, as lobbyists for the member organizations must disclose who their clients are (i.e., for which organizations they work).  See id. at 35; § 1603(b)(2).  Thus, one can easily discern whose interests are being represented, even if one does not know that organizations are jointly pursuing certain interests.  Not satisfied with this sensible conclusion, plaintiff questions whether the statute results in "any" advancement of the purpose underlying the statute, namely, the ferreting out of the real parties in interest behind lobbying efforts, given that groups that use their members' lobbyists would have made the same disclosures under the old statute as they do under the new one.  Motion at 3-4.  Plaintiff's point rings hollow.  That the statute does not require additional disclosures in a situation that does not present the concerns underlying the statute does not establish that the statute fails to advance its underlying purposes.  Rather, that fact shows simply that the statute is narrowly tailored to address only extant problems.

Plaintiff's second argument, regarding the application of § 207 to long-established groups, fares no better. Motion at 4. Congress amended Section 207 to bring the real parties in interest that are driving lobbying efforts into the daylight, so that Members of Congress and the public would not be in the dark regarding who was "pulling" (or attempting to "pull") the levers of power. Taylor Opp. at 4-5. Importantly, as the Court concluded, long-existing groups like NAM can present the very problem that Congress sought to remedy, given that they can have undisclosed members driving their lobbying agenda; short-lived groups do not have a monopoly on causing this problem. Opinion at 39-40. Indeed, NAM is an apt example, for this long-established group's supposedly well-known constituency is so broad as to provide almost no indication of the interests that NAM's lobbyists are pursuing. Taylor Opp. at 16-17. Sensibly, then, what matters under the statute is not how long a group has been in existence, but whether it presents the problem to be remedied. See Defendants Nancy Erickson's and Lorraine C. Miller's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion, Feb. 29, 2008, Doc. No. 13, at 28-29 (demonstrating that the statute appropriately encompasses associations like NAM).

Plaintiff's third argument, which assails the statute's use of an intention-based standard, also falters. Motion at 4-5. As the Court pointed out, contrary to plaintiff's arguments, the Supreme Court did not banish intention-based standards from First Amendment jurisprudence in Federal Election Comm'n v. Wisconsin Right to Life, Inc. ("WRTL"), 127 S.Ct. 2652 (2007). Opinion at 48. And what is more, as the Court emphasized, this case is readily distinguishable from WRTL because plaintiff here can more readily muster objective evidence of intention regarding the provenance of background materials than could a party under the statute in WRTL

generate evidence of intention regarding whether an advertisement was intended as a campaign ad or an issue ad. Opinion at 50-51. Because of this difference, and the check provided by the statute's scienter requirements, id. at 51-52, the HLOGA does not cause any undue chill, and there is no reason to scrap the intention-based test which well serves the purpose of the statute: revealing those who seek to "push" or " pull" the political branches to serve their own purposes.

### Balance of Harms

The interests of Senators and Representatives in knowing the sources of lobbying pressures outweigh plaintiff's speculative harms. Enjoining the operation of this statute would deprive Members of Congress and the public (at least for a time) of the opportunity to benefit from the more fulsome disclosure requirements offered by the statute. They will benefit, for example, by having a better idea of the demand for policy changes because organizations will not be able to hide behind multiple fronts. See Opinion at 28-29. Weighing against this benefit to the legislative defendants and the public is a mere speculative harm, namely, that the disclosure required by the statute will expose NAM and its members to retribution for NAM's lobbying activities. The problem with this assertion of harm, as the Court has observed, is that NAM has proffered no evidence demonstrating that it, or any of its already known members, has ever been subject to retribution for NAM's lobbying activities. Opinion at 42-45; see Taylor Opp. at 13. As such, there is no reason to believe that NAM or its members will be subject to any such retribution in the future. In short, the obvious benefit to Congress's ability to represent its

constituents outweighs the conjectured, and historically unsupported, allegation of harm furnished by NAM.[2]

### The Public Interest

The public interest militates against plaintiff's request. Section 207 serves at least two public goods: (i) it facilitates representative government by allowing those in government and their constituents to more intelligently assess the forces that push and pull the political branches, Opinion at 28-29; see Harriss, 347 U.S. at 625 (explaining that the "full realization of the American ideal of government by elected representatives depends" on identifying those who "pressure" the government), and (ii) it prevents the appearance of corruption fostered by allowing lobbyists to pursue the interests of unnamed organizations at the highest levels of government, Opinion at 29-31; see McIntyre, 514 U.S. at 356 n.20 (1995) (noting that "[t]he activities of lobbyists who have direct access to elected representatives, if undisclosed, may well present the appearance of corruption"). Granting plaintiff's request for an injunction will thwart the operation of Section 207, which confers great benefits on the American public.[3]

---

[2] In addition, the harm, assuming there is some, of the few disclosures that would take place before the D.C. Circuit resolves this case would not be as great as plaintiff intimates. First, plaintiff will not have to reveal every member, just those that meet the reporting threshold for each period (and whose membership has not already been made public). Second, the anonymity inherent in an anonymous association can be regained. Thus, revealing that the Acme Corporation, a hypothetical member of NAM, participated in NAM's lobbying to an extent requiring disclosure under the current statute would not forfeit Acme's anonymity forever. If plaintiff were to prevail on the merits, in the future, one would not know whether Acme remained a part of NAM or whether it had severed its ties, because its involvement with NAM would not have to be revealed (assuming Acme did not meet the requirements of whatever statute would replace the current one).

[3] The Court has already conducted a balancing of the benefits and burdens of the statute and concluded with little difficulty that the benefits predominate: "Were the Court to [balance NAM's showing of harm against the interests asserted by Defendants], it would easily conclude

## **CONCLUSION**

For the above stated reasons, the Court should deny plaintiff's motion for a stay and an injunction pending appeal.

Dated: April 15, 2008                                   Respectfully submitted,

                                                        JEFFREY S. BUCHOLTZ
                                                        Acting Assistant Attorney General

                                                        JEFFREY A. TAYLOR
                                                        United States Attorney

                                                        THEODORE C. HIRT
                                                        Assistant Director,
                                                        Federal Programs Branch

                                                        s/ Justin M. Sandberg                
                                                        JUSTIN M. SANDBERG
                                                        (Ill. Bar. No. 6278377)
                                                        Trial Attorney, Federal Programs Branch
                                                        Civil Division
                                                        U.S. Department of Justice
                                                        P.O. Box 883
                                                        Washington, D.C. 20044
                                                        (202) 514-3489 (telephone)
                                                        (202) 616-8202 (facsimile)

                                                        Counsel for Defendant U.S. Attorney Taylor

---

that, in light of the speculative nature of NAM's allegations, the substantial public interest in disclosure identified by the legislative history of [§ 207 and other disclosure requirements] outweigh[s] the harm generally alleged." Opinion at 45 (citations and quotations omitted; all of the brackets except for the first set are in the original).