IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF MANUFACTURERS, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No.  08-cv-0208 (CKK) ) |
| HONORABLE JEFFREY TAYLOR, *et al.*, | ) ) ) |
| Defendants. | ) ) |

**LEGISLATIVE DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFF NAM'S MOTION
FOR A STAY AND AN INJUNCTION PENDING APPEAL**

**INTRODUCTION**

Plaintiff National Association of Manufacturers ("NAM") moves this Court for an injunction pending appeal to prevent the implementation of section 207 of the Honest Leadership and Open Government Act of 2007 ("HLOGA"),  Pub. L. No. 110-81, 121 Stat. 735, on Monday, April 21, 2008.  Defendants Secretary of the Senate Nancy Erickson and Clerk of the House Lorraine C. Miller ("Legislative Defendants") oppose Plaintiff's Motion, which, as described below, wholly fails to meet the high standard required for obtaining an injunction pending appeal.

HLOGA § 207 amended existing lobbying disclosure law to require the disclosure of member organizations that contribute significantly to the lobbying activities of an association or coalition and actively participate in the planning, supervision, or control of those lobbying activities.  The NAM filed this suit claiming that the amended law violated its First Amendment

rights of speech and association, and that § 207's language was unconstitutionally vague. After full briefing, the Court rejected the NAM's challenge, finding in a thorough opinion that HLOGA § 207 did not violate the First Amendment and was not vague. Memorandum Opinion, April 11, 2008 ("Mem. Op.").

Despite the Court's finding that none of the NAM's claims had legal merit, the NAM now moves to enjoin the operation of the federal statute pending a decision on its appeal. On April 21, 2008, HLOGA § 207 will require, in the first quarterly filing under the Act, disclosure of the identity of organization members of the NAM that substantially fund and actively participate in the NAM's lobbying activities. The NAM claims that such disclosure will cause it irreparable harm because certain anonymous members that meet the threshold of disclosure will suffer retaliation from being publicly associated with the NAM's lobbying activities unless operation of the statute is enjoined.

The NAM bears a heavy burden in seeking not merely to have this Court stay its own order but affirmatively to grant interim injunctive relief against an Act of Congress – where this Court has already rejected plaintiff's claims on the merits. The Court should deny plaintiff's motion as each of the four factors that are considered in determining whether to issue such an injunction weighs against the NAM's motion. First, as the Court's carefully reasoned opinion explains, the NAM's First Amendment claims are not likely to succeed because the provisions of HLOGA § 207 are narrowly tailored to serve a compelling governmental interest, and the NAM's vagueness challenge is similarly unavailing as section 207's terms are "sufficiently easily understood and objectively determinable." Mem. Op. at 55 (internal quotation marks and citation omitted). Second, the NAM has failed to establish any likelihood of irreparable harm beyond its bare allegations that it and its members will suffer from disclosure of those member

organizations that significantly fund and actively participate in its lobbying activities.  Third, an injunction against the statute will harm the Congress and the interested public by preventing them from obtaining information revealing those organizational interests attempting to influence the policy and legislative processes, as mandated by law.  Fourth, an injunction against HLOGA § 207 will harm the public's interest in bringing sunlight into the realm of lobbying, avoiding the appearance of corruption in governmental processes, and having the laws enacted by their duly elected representatives enforced and observed.

## ARGUMENT

**I.      Legal Standard**

>   Four factors are considered in deciding a motion for an injunction pending appeal:
>
>   (1) the likelihood that the party seeking the [injunction] will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent [an injunction]; (3) the prospect that others will be harmed if the court grants the [injunction]; and, (4) the public interest in granting the [injunction].

*Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam); *see also Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *Shays v. Federal Election Comm'n*, 340 F. Supp. 2d 39, 44 (D.D.C. 2004) (Kollar-Kotelly, J.).  "[I]t is the movant's obligation to justify the court's exercise of such an extraordinary remedy," *Cuomo*, 772 F.2d at 978, and the movant carries a heavy burden in seeking such relief.  As the Supreme Court has stated in the equivalent preliminary injunction context, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, at 129-130 ($2^d$ ed. 1995) (emphasis added)).

Beyond the heavy burden that courts ordinarily place on a movant's request for emergency injunctive relief, the NAM's motion is subject to an even higher standard because it seeks to enjoin the operation of an Act of Congress.  As Chief Justice Rehnquist explained in denying an application to enjoin enforcement of a federal statute, Acts of Congress are "presumptively constitutional" and, as such, "'should remain in effect pending a final decision on the merits by this Court.'" *Turner Broadcasting System, Inc. v. Federal Communications Comm'n*, 507 U.S. 1301, 1302 (1993) (Rehnquist, C.J., in chambers) (quoting *Marshall v. Barlow's, Inc.*, 429 U.S. 1347, 1348 (1977) (Rehnquist, J., in chambers)).  Indeed, a court should be especially hesitant when asked to grant an injunction pending appeal barring implementation of a federal statute, as the NAM requests here, as opposed to merely a stay of the court's order, because such an injunction constitutes "judicial alteration of the status quo."  *Id.* at 1302 (quoting *Ohio Citizens for Responsible Energy, Inc. v. Nuclear Regulatory Comm'n*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers)).

**II.     The Court Should Deny Plaintiff's Motion for Injunction Pending Appeal**

The NAM has failed to establish that any of the four factors weighs in favor of its request, much less has it made the "clear showing" necessary to satisfy the high standard required for enjoining the operation of a federal statute pending appeal.

   *1.      Plaintiff Has Not Demonstrated A Likelihood of Success on the Merits*

Relying on well-established Supreme Court precedent upholding requirements for lobbying disclosure, *United States v. Harriss*, 347 U.S. 612 (1954), and for the disclosure of campaign contributions, *Buckley v. Valeo*, 424 U.S. 1 (1976), and *McConnell v. Federal Election Comm'n,* 540 U.S. 93 (2003), the Court held that the disclosure requirement in HLOGA § 207 is narrowly tailored to serve two compelling government interests, and thus, did not violate the

First Amendment. The Court found that "the interest in providing Congress and the electorate with information regarding 'who is being hired, who is putting up the money, and how much' . . . is properly described as compelling." Mem. Op. at 29 (quoting *Harriss*, 347 U.S. at 625). The Court also "easily conclude[d] that the interest in avoiding the appearance of corruption is a compelling one." *Id.* at 30.

Section 207 furthers these vital governmental interests by ensuring that lobbying disclosure requirements are not easily circumvented by organizations simply channeling their lobbying through coalitions and associations. The Court found that HLOGA § 207 was the product of careful congressional consideration regarding the need to close a loophole in lobbying disclosure, *id.* at 33-34, that its disclosure requirement provides "precisely the information" that the Supreme Court "found to be the valid purpose of lobbying disclosure," *id.* at 34 (citing *Harriss*, 347 U.S. at 625), and that "the harms [it] aims to remedy in fact exist and that [it] will materially reduce those harms." *Id.* at 38. The Court concluded that HLOGA § 207 was not overinclusive, but rather narrowly tailored to the harms it addresses and that no less restrictive alternatives existed that would be almost equally effective. *Id.* at 39-40.

The Court also found that the term "lobbying activities," which has been part of the LDA for over a decade, and the term "active participation" were "sufficiently 'easily understood and objectively determinable,' . . . as to provide the NAM and other organizations like it with fair and clear notice of what § 207 requires of them." *Id.* at 55 (quoting *McConnell*, 540 U.S. at 194). Thus, the Court properly rejected the vagueness challenge, both on the face of the statute and as applied to the NAM.

The NAM offers no points of law that undermine this Court's holding or demonstrate any likelihood that it will prevail on its appeal. In its motion, the NAM once again makes the

argument that section 207 is underinclusive because it only applies when associations or coalitions employ or hire lobbyists and does not apply to "any coalition that chooses to operate through lobbyists employed or retained by one or more members." Plaintiff NAM's Motion for a Stay and an Injunction Pending Appeal ("Pl's Mot.") at 3. But the Court already rejected that argument, Mem. Op. at 34-35, because in such situations the member organization itself would be disclosed as the client on lobbying disclosure filings and would not be evading the disclosure requirements by hiding its lobbying through the coalition.

The NAM argues that this disclosure by the organization is insufficient because the filing will not necessarily mention that the organization is part of a coalition. *See* Pl.'s Mot. at 3. However, that the organization's membership in the coalition would not be disclosed does not indicate any underinclusiveness in HLOGA § 207, as that provision is meant to insure that organizations do not conceal *their* lobbying activities by channeling them through associations and coalitions. If the organization is disclosed (as would be the case in that hypothetical situation), the purpose of section 207 is effected – regardless of whether the organization is a member of one or more coalitions.

The NAM also asserts a likelihood of success on appeal based on its claim that the application of section 207 to long-established associations demonstrates that the provision is not narrowly tailored. *See* Pl.'s Mot. at 4. But an association's being long-standing does not preclude member organizations from using that association to shield their lobbying activities from disclosure. If plaintiff is suggesting again that the long-standing nature of the NAM means that the interests it represents are well known, the Court specifically found that "[w]hile the NAM's constituencies may, in fact, be understood by Members of Congress and executive branch officials, it is doubtful that the general public (whose informational interests § 207

supports) have an equally thorough understanding." Mem. Op. at 40.  Hence, application of the disclosure requirements of § 207 to the NAM does not demonstrate that that section is overly broad. *Id.*

The NAM's final argument for likelihood of success on appeal, that the intent standard used in the definition of "lobbying activities" is impermissibly vague in the First Amendment context, was fully considered and rejected by the Court. *Id.* at 48-50.  The Lobbying Disclosure Act defines lobbying activities to include "research and other background work that is intended, at the time it is performed, for use in [lobbying] contacts." 2 U.S.C. § 1602(7).  It is clear from that definition that research and background work done for the purpose of supporting lobbying contacts counts as lobbying activities; research and background work done for other purposes and then used in lobbying contacts does not.  The definition is not so vague that "a person of ordinary intelligence" cannot understand what conduct is covered.  *See Buckley*, 424 U.S. at 77.

    2.    *The NAM Fails to Establish Any Irreparable Injury From HLOGA § 207*

To constitute irreparable harm, "the injury must be both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. Federal Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam).  The NAM fails to demonstrate the likelihood of any concrete irreparable injury that could justify an injunction against the operation of a federal statute.

The NAM claims in this suit that it will be forced to disclose certain, unidentified members if it must comply with § 207's requirements, and that this disclosure will cause those organizations to suffer retaliation in the form of boycotts or other action against them.  However, this Court has correctly found that "the NAM offers only speculation that harm may befall its

members if they are disclosed as connected to the NAM's lobbying activities." Mem. Op. at 44. Indeed, the Court noted that even though the NAM publicly disclosed on its website over 250 of its member organizations (212 Members of the NAM's Board of Directors and Executive Committee, with their affiliated companies, and 58 member companies on the Small and Medium Manufacturers' Board of Directors), it provided absolutely "no evidence of any past incidents suggesting that public affiliation with the NAM leads to a substantial risk of 'threats, harassment, or reprisals from either Government officials or private parties.'" *Id.* (quoting *Buckley*, 424 U.S. at 74).

Rather than providing such evidence, the NAM proffered to the Court six newspaper articles and one lawsuit to support its bald allegation that its member organizations will suffer retaliation if their participation in the NAM's lobbying activities is disclosed. Yet, "the newspaper articles and lawsuit" – which had nothing to do with the NAM or its lobbying – "in no way indicate that any member of the NAM (or the NAM itself) has suffered harm or retaliation as a result of the NAM's lobbying activities." *Id.* Put simply, the NAM offers nothing more than its own unsupported assertions that members disclosed pursuant to HLOGA § 207 will likely suffer harm from retaliation. As the D.C. Circuit has explained, "[b]are allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur. The movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Wisconsin Gas Co.*, 758 F.2d at 674 (emphasis in original).

The NAM's argument in its preliminary injunction motion that without an injunction it will be irreparably harmed by having to expend resources and funds complying with the requirements of HLOGA § 207, Pl.'s Mot. for a Preliminary Injunction and Supp. Mem. of Law

at 30-31, also fails to demonstrate an irreparable injury.  This Court has previously stated that the "argument [] that potentially wasted and diverted staff resources constitute an 'irreparable harm'[] is meritless."  *Shays*, 340 F. Supp. 2d at 48.

>   3.  *Congress and the Public Will Be Harmed if the Court Blocks Them From Obtaining the Information Required to Be Disclosed by HLOGA § 207*

An injunction against section 207 would harm Congress and the interested public.  As the Court explained, section 207 is meant to provide Congress and the public with information to allow them to consider the influence and effect of lobbying on the public policy process.  Mem. Op. at 29 (compelling interest in providing Congress and the electorate with information regarding lobbying).  An injunction against the operation of section 207 would deny Congress and interested persons information about the identity of the organizations and interests behind the lobbying of associations and coalitions – leaving them in the dark as to the nature and extent of the interests seeking to pressure government on public policy matters.  *Cf. Federal Election Comm'n v. Akins*, 524 U.S. 11, 21-22 (1998) (noting in standing context that "fail[ure] to obtain information which must be publicly disclosed pursuant to a statute" is a cognizable harm).

In addition, in enacting HLOGA, Congress switched from semi-annual to quarterly filings for lobbying disclosure reports precisely because of the importance that the information in those filings be disclosed as close in time to the lobbying activity they reveal as possible.  Hence, even a temporary injunction which delays the disclosure of the information required by § 207 is contrary to Congress's determination that lobbying disclosures should be available closer in time to the lobbying disclosed.  Thus, an injunction barring operation of section 207 would harm Congress and the public by preventing them from having access to section 207 information close to when the lobbying activities occurred.

Further, the injunction the NAM seeks would throw the disclosure scheme into uncertainty and disarray and confuse the disclosure obligations of numerous other filers that are already preparing to submit their April 21, 2008 reports in compliance with HLOGA § 207.

    4.    *An Injunction Against § 207 Would Impair the Public Interest*

In enacting the LDA and later strengthening its provisions in HLOGA, Congress sought to protect against the appearance of corruption in the political process. *See* Mem. Op. at 29-30. As the Supreme Court has recognized, lobbying disclosure serves "to maintain the integrity of a basic governmental process," *Harriss*, 347 U.S. at 625, and "is designed to safeguard a vital national interest." *Id.* at 626. An injunction against the operation of § 207 would undermine the disclosure regime established by Congress and, thus, frustrate the great public interest in shining light on the influences being brought to bear on the political process in order to protect against the appearance of corruption and to maintain the integrity of the governmental process.

## CONCLUSION

For the foregoing reasons, and for the reasons expressed in Defendant Taylor's Opposition, the Court should deny Plaintiff NAM's Motion for a Stay and an Injunction Pending Appeal.

Respectfully submitted,

| | |
|---|---|
| IRVIN B. NATHAN, D.C. Bar # 90449<br>General Counsel | /s/<br>MORGAN J. FRANKEL, Bar #342022<br>Senate Legal Counsel |
| KERRY W. KIRCHER, D.C. Bar # 386816<br>Deputy General Counsel | PATRICIA MACK BRYAN, Bar #335463<br>Deputy Senate Legal Counsel |
| /s/<br>CHRISTINE M. DAVENPORT<br>Assistant Counsel | GRANT R. VINIK, Bar #459848<br>Assistant Senate Legal Counsel |
| RICHARD A. KAPLAN, D.C. Bar # 978813<br>Assistant Counsel | THOMAS E. CABALLERO<br>Assistant Senate Legal Counsel |
| Office of General Counsel<br>U.S. House of Representatives<br>219 Cannon House Office Building<br>Washington, D.C. 20515<br>(202) 225-9700 (tel)<br>(202) 226-1360 (fax) | Office of Senate Legal Counsel<br>642 Hart Senate Office Building<br>Washington, D.C. 20510-7250<br>(202) 224-4435 (tel)<br>(202) 224-3391 (fax) |
| Counsel for Defendant Lorraine C. Miller,<br>Clerk of the House of Representatives | Counsel for Defendant Nancy Erickson,<br>Secretary of the Senate |

April 16, 2008