**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

NATIONAL ASSOCIATION OF MANUFACTURERS,

Plaintiff,

v.

HONORABLE JEFFREY A. TAYLOR, et al.

Defendants.

Case No. 08-cv-00208 (CKK)

**PLAINTIFF NAM'S REPLY TO DEFENDANT TAYLOR'S OPPOSITION TO THE MOTION FOR A STAY AND AN INJUNCTION PENDING APPEAL**

The Court's April 16th Order directed the NAM to provide authority showing that the threatened harm justifies an injunction pending appeal. This Reply brief responds to that directive. The Plaintiff believes that the remaining issues raised by Defendant Taylor are fairly encapsulated within the Legislative Defendants' Opposition to the Motion for a Stay and an Injunction Pending Appeal. The Plaintiff will, therefore, address those issues in a separate filing in accordance with the schedule established by this Court.

As the Court's April 16th Order noted, the April 21 filing deadline is hard upon us. Accordingly, the NAM has filed its notice of appeal and intends to file today a motion for preliminary relief with the Court of Appeals. Neither of those actions deprives this Court of its authority over the pending motion, the NAM's filing will alert that Court of Appeals that this motion is pending, and the NAM believes that informal coordination with respect to such motions may occur. Given the urgency of the situation, however, the NAM thinks it essential to give the Court of Appeals this degree of advance notice.

## I. THE STANDARD FOR INJUNCTION PENDING APPEAL IS THE SAME AS FOR A PRELIMINARY INJUNCTION.

This Court considers four factors in determining whether to grant a motion for an injunction or stay pending appeal: (1) the likelihood that the moving party will prevail on the merits; (2) the prospect of irreparable injury to the moving party if relief is withheld; (3) the possibility of harm to other parties if relief is granted; and (4) the public interest. *See Washington Metro. Area Transit Comm'n, v. Holiday Tours, Inc.*, 559 F.2d 841, 842-43 & n.1 (D.C. Cir. 1977). As *Holiday Tours* notes, those are the same factors that apply to motions for preliminary injunctions. *Id.*

In First Amendment cases, a substantial likelihood of success on the merits typically establishes all four elements necessary for preliminary relief, including the element of irreparable injury. *See Phelps-Roper v. Nixon*, 509 F.3d 480, 488-89 (8th Cir. 2007) (reversing denial of preliminary relief); *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (collecting authority); *Wil-Kar, Inc. v. Village of Germantown*, 153 F. Supp. 2d 982, 987 (E.D. Wis. 2001) (noting that while these elements are theoretically distinct, "in the First Amendment context they essentially reduce to the question of whether plaintiff is likely to succeed on the merits"). The additional emphasis placed on this first factor is because any loss of First Amendment freedoms is irreparable injury as a matter of law, *see, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); *Branch v. FCC*, 824 F.2d 37, 40 (D.C. Cir. 1978) (quoting and applying *Elrod)*, and members of the public and the Government both share a vital interest in protecting First Amendment rights from threat. *See Phelps-Roper*, 509 F.2d at 485-86; *PETA v. Gittens*, 215 F. Supp. 2d 120, 134 (D.D.C. 2002) ("the public interest favors a preliminary injunction whenever First Amendment rights have been violated"); *Connection Distrib. Co.*, 154 F.3d at 288 (the government's interest lies in protecting First Amendment rights).

To demonstrate irreparable injury, *Chaplaincy of Full Gospel Churches v. England,* 454 F.3d 290, 301 (D.C. Cir. 2006), requires both an apparent violation and a showing that plaintiffs "are or will be engaging in constitutionally protected behavior" that the violation will affect. As the Declaration of Jan Sarah Amundson attests – and no one has questioned – the NAM has, is, and will engage in policy speech, expressive advocacy, and petitioning in the form of lobbying.[1]

There is abundant authority granting injunctions pending appeal to preserve First Amendment values. A very recent case is *Christian Legal Society v. Walker*, 453 F.3d 853 (7th Cir. 2006). There, a University had withheld recognition from a student group, meaning that it could not use University facilities during the pendency of the appeal. Without requiring any showing that the group was unable to function without recognition, the Seventh Circuit granted an injunction pending appeal, ruling that the denial of recognition appeared to violate the group's First Amendment rights and thus established irreparable injury. *See also Homans v. Albuquerque*, 264 F.3d 1240 (10th Cir. 2001) (because legislative spending limits applicable to plaintiff's campaign probably violated the First Amendment, the court of appeals granted an injunction pending appeal of a district court ruling denying preliminary relief).

Although ordinary statutes are presumed valid, the situation is very different where, as here, the statute in question substantially burdens core First Amendment rights and, hence, appears subject to strict scrutiny. In such a case, the normal presumption of statutory validity is

[1] Where a party has made a strong showing of irreparable injury, a very modest showing of likely success may support an injunction pending appeal. *See Cuomo v. United States NRC*, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam) ("Probability of success is inversely proportional to the degree of irreparable injury evidenced. A stay may be granted with either a high probability of success and some injury, or *vice versa*") (emphasis in original); *City of Tacoma v. FERC*, No. 05-1054, 2005 U.S. App. LEXIS 7803, *2 (D.C. Cir. 2005) (citing the *Cuomo* test in granting a motion for a stay pending review).

reversed and the statute is deemed invalid until stringently justified.[2] In such circumstances, courts give greater emphasis to protecting core First Amendment values.

## II. CONTRARY TO DEFENDANT TAYLOR'S ASSERTIONS, THE NAM AND ITS MEMBERS WILL SUFFER IRREPARABLE INJURY IF THIS COURT DOES NOT GRANT A STAY AND AN INJUNCTION PENDING APPEAL.

### A. The Threatened Injury To The NAM's First Amendment Rights Is Irreparable Injury.

As just discussed, where core First Amendment rights are at stake, the NAM does not need to show that individual members would suffer physical retribution in order to demonstrate irreparable injury. The fact that individual members of the NAM will be publicly named on the organization's reports is itself sufficient to establish the harm. *See, e.g.*, *U.S. v. Philip Morris Inc.*, 314 F.3d 612 (D.C. Cir. 2003) (finding that no "specific irreparable injury [need] occur" in order to satisfy the irreparable injury standard); *Quaker Action Group v. Hickel*, 421 F.2d 1111, 1116 ("The right of the people peaceably to petition the Government for a redress of grievances is so basic to our society that any deprivation might well be found to constitute irreparable injury"); *Mitchell v. Cuomo,* 748 F.2d 804, 806 (2d Cir.1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary") (citing 11 C. Wright & A. Miller, Federal Practice and Procedure § 2948, at 440 (1st ed.1973)); *N.Y. State Bar Ass'n v. Reno*, 999 F. Supp. 710, 714 (N.D.N.Y. 1998) ("if the government's enforcement of [a statute] will deprive Plaintiff of its First Amendment rights, this constitutes *per se* irreparable injury to the Plaintiff"). Indeed, if Defendant Taylor's arguments in justifying the statute (at 3-4) are to have any force at all, then the fact that Members of

---

[2] As the Court's Opinion recognizes (at 27), the Defendants must carry a heavy burden to justify the statute here. Thus, it is strongly presumed to be invalid. *See San Antonio School Ind. School Dist. v. Rodriguez,* 411 U.S. 1, 16 (1973) (strict scrutiny reverses the presumption of validity). Indeed, to the extent lesser standards of scrutiny place some burden of justification on Defendants, they demonstrate that the normal presumption of validity does not apply.

Congress would presumably use the new information on the LDA reports to "facilitate[] their decision making process" – no matter how marginal or helpful that information may be in light of Section 207's narrow-tailoring problems – shows that mere public disclosure of such information will irreparably injure the Plaintiff's First Amendment rights.

The disclosures threatened here clearly are irreparable – the bell cannot be unrung, particularly in the age of the Internet where disclosures "will be indexed by search engines and widely distributed and archived by various Internet companies." *Securities Ind. and Financial Markets Ass'n v. Garfield*, 469 F. Supp. 2d 25, 41-42 (D. Conn. 2007). The NAM is aware of no legal authority – and apparently neither is Defendant Taylor (at 6 n.2) – that suggests public disclosure of information on government reports can be undone or that the "anonymity inherent in an anonymous association can be regained." In fact, courts have reached the exact opposite conclusion. *See, e.g.*, *In re Sealed Case*, 237 F.3d 657, 665 ("Because the public would have had immediate access to the record, the issues would have been effectively unreviewable"); *Garfield*, 469 F. Supp. 2d at 41 (noting that the "disclosure of confidential information . . . is the quintessential type of irreparable harm that cannot be compensated or undone by money damages") (internal quotations omitted).

Defendants argue that only the type of specific and Draconian injuries that faced members of the NAACP during the civil rights movement are sufficient to show a First Amendment violation from disclosure, but that is not so. Where such a showing is made, otherwise compelling and tailored disclosure requirements may have to yield. But the First Amendment is also triggered by substantial practical burdens on core rights that may be sufficient to induce some degree of self-censorship.

*FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 254-55 (1986), found a First Amendment violation where "recordkeeping and disclosure obligations" were sufficiently burdensome and annoying that they might cause some to refrain from full exercise of their rights. The opinion stressed that the "fact that the statute's practical effect may be to discourage protected speech is sufficient to [establish] an infringement on First Amendment rights. *Id.* at 255.[3] This did not mean that such burdens could not be imposed, but that the Government must demonstrate that "substantial Government interests" justified "the administrative costs of complying with such increased responsibilities [that] may create a disincentive for the organization itself to speak." *Id.* at 255 n.7. Similarly, *Buckley v. Valeo*, 424 U.S. 1, 75-76 (1976), held that a statute mandating disclosures was subject to "strict" scrutiny because it imposes "real, practical burdens" on expressive association. The *Buckley* Court did not require any showing that the burdens resulted in the same type of injuries discussed in *NAACP v. Ala. Ex rel. Patterson*, 357 U.S. 449, 460-63 (1958). *Christian Legal Society* also found a First Amendment violation from the practical difficulties associated with lacking official University recognition. The key point is that since First Amendment rights are so highly-valued, irreparable harm may be shown where the practical effect of regulation may be to deter or inhibit such rights, or induce self censorship.

As we discuss below, the uncontested Declaration of Jan Amundson demonstrates that Section 207 threatens serious interference with the speech, expressive association, and petitioning activities of the NAM. It also shows that many NAM members will not participate if

---

[3] The "practical effects" language is from the plurality opinion. However, it is well grounded in abundant precedent. *See Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478, 511 (E.D.Pa. 1995) (collecting authority); *Day v. Holahan*, 34 F.3d 1356, 1363 (8th Cir. 1994) (relying on standard to invalidate legislation).

they face disclosure and identifies substantial grounds for those concerns. This Court's Opinion accepts those effects as sufficient to establish a substantial burden on First Amendment rights and to trigger strict scrutiny. Defendants cite no case in which such a situation was held insufficient to establish irreparable constitutional injury.

**B. The Threatened Injury Here Is Particularly Acute Because It Would Impair Trade Secret Interests And Goodwill.**

As Plaintiff demonstrated in its initial papers, *see* Pl. Mot. for a Prelim. Inj. and Supporting Mem. of Law at 31, "the NAM's confidential membership list is a valuable proprietary asset in the nature of a trade secret." None of the Defendants contest that claim. Trade secrets are a form of property that merit constitutional protection. *See Philip Morris, Inc. v. Reilly,* 312 F. 3d 24 (1st Cir. 2002) (en banc) (compelled public disclosure of trade secret is a forbidden taking). Moreover, disclosure of trade secrets regularly is held to threaten irreparable injury. *See, e.g.*, *MacDermid, Inc. v. Raymond Selle and Cookson Group, PLC*, Civil No. 3:07cv1566, 2008 WL 576766, at *9 (D. Conn. March 4, 2008). As this Court has recognized in the preliminary injunction context, "the public interest is served by protecting confidential business information and trade secrets." *Merrill Lynch v. Wertz*, 298 F. Supp. 2d 27, 34-35 (D.D.C. 2002).

Also, an important asset of the NAM is its membership goodwill and trust, which it has preserved over the last century by keeping confidential the very type of information that Section 207 would compel it to disclose. Forcing the NAM to make those disclosures would seriously impair that goodwill in a way that is not compensable and, hence, is irreparable. Such injuries qualify as irreparable for purposes of preliminary relief. *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 77 (D.D.C. 2001).

### C. The NAM Has Made An Uncontested Evidentiary Showing That It Faces Irreparable Injury Here.

The NAM's opening Memorandum (at 29-31) sought a preliminary injunction, thus invoking the same standards applicable to an injunction pending appeal. It discussed the practical impact of Section 207 on its activities and the resulting threat of injury in some detail.

As that Memorandum noted, the NAM regularly lobbies on a variety of hot-button issues, including global warming and nuclear power, that may lead to adverse consequences for members identified as "actively participat[ing]" in such efforts.[4] Regardless of whether the threats facing a particular company are severe enough to support an absolute privilege against disclosure, they are sufficiently troubling to chill First Amendment rights. Likewise, such disclosure impairs the right of anonymous speech on public issues – a right that was vigorously exercised by Alexander Hamilton, John Jay, and James Madison when they argued in favor of Constitutional ratification.

In addition to these burdens, experience has shown that publicly linking a NAM member to the association's lobbying activities often results in legislators and other groups with policy-influencing ability making demands for contributions and other support from individual members. As a matter of policy, the NAM does not make its membership list public, much less publicly identify the list of members active on particular issues (although individual members may elect to publicize their position). Members of the NAM have made clear that this protection is important to their decision to support the NAM. What is more, members of the NAM are not

---

[4] *See, e.g.*, *IBEW, Local 1547 v. Alaska Util. Constr., Inc.*, 976 P.2d 852, 859 (Alaska 1999); David Rising, *Clashes Break Out Ahead of Summit*, Associated Press, June 3, 2007, Peter Geier, *Sea Change in Asbestos Torts is Here; New Strategies, New Defendants Seen*, National Law Journal, Oct. 31, 2005, Robert Pear, *Doctors in Antitrust Fight Boycott Merck Products*, New York Times, May 23, 2000, Harry Stoffer, *Toyota Joins Detroit 3 in CAFE Fight*, Automotive News, July 30, 2007, Jim Lobe, *ExxonMobil Takes Heat on Global Warming*, Inter Press Service News Agency, July 12, 2005, *available at* http://www.ipsnews.net/print.asp?idnews=29469 (last visited Feb. 4, 2008).

always of one mind. Often, when a group considers how to proceed on a particular lobbying issue, some members may favor a different position than that ultimately reached by the association, while others may oppose any action at all. Identifying those members with the NAM's lobbying efforts is unfair to these members and could actually mislead legislators, executive branch officials, and the general public.

Since the Amendments were signed into law, the NAM has received many inquiries from its members asking whether their involvement in the NAM's lobbying activities would need to be disclosed. As noted above, public association with the NAM's lobbying activities may make members a target for a wide range of adverse actions, ranging from publicity campaigns to boycotts to solicitations to labor disputes to local political pressure. This may vary according to the issue and the member. Faced with the potential negative consequences, some of the NAM's members will limit their support for and participation in the NAM in order to avoid the risk of disclosure under the amended Act's registration and reporting requirements.

Because the challenged provision of the Amendments, § 207, is so vague and broad, the NAM is not able to provide clear, advance guidance to its members as to what activities will or will not lead to public disclosure. Since a violation of the new law may have serious consequences, there is strong pressure for the NAM to over-report, thus increasing the risk to participating members. Moreover, the amended Act permits Defendants Erickson and Miller to demand further disclosures if what is filed is deemed inadequate. *See* 2 U.S.C. § 1605. Thus, the only way that the NAM's members confidently can protect themselves is to avoid any activities that, on the broadest possible reading, might be thought to require disclosure.

Uncertainty over the meaning and intrusiveness of the challenged provision is widespread and not limited to the NAM. Other, similar groups face the same difficulties just described.

Until and unless legal relief is provided, attempts to interpret and apply the law will impose a continuing and substantial burden on and deterrent to a wide range of association lobbying protected by the First Amendment.

## III. CONCLUSION

Contrary to Defendant Taylor's claims, the threat to the NAM and its members is neither speculative nor conjectural. Unless Section 207 is suspended, disclosures will have to be made. Those disclosures will expose aspects of the NAM's expressive associational activity that it has carefully kept confidential. The result will be an immediate breach of trust and goodwill with the NAM's membership and an immediate curtailment of member participation in core speech, expressive association, and petitioning. In short, there will be substantial and irreparable burdens on core rights, compounded by irreparable injuries to trade secrets and goodwill. In this case of first impression, some prior appellate consideration of whether the stringent standard of strict scrutiny has been met should be allowed.

Dated: April 17, 2008

Respectfully submitted,

____________/s/______________
Thomas W. Kirby (Bar No. 915231)
E-mail: tkirby@wileyrein.com
Jan Witold Baran (Bar No. 233486)
E-mail: jbaran@wileyrein.com
Andrew G. Woodson (Bar No. 494062)
E-mail: awoodson@wileyrein.com
WILEY REIN LLP
1776 K St., NW
Washington, D.C. 20006

202.719.7000

Counsel for Plaintiff