UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF MANUFACTURERS, <br><br> Plaintiff, <br><br> v. <br><br> HONORABLE JEFFREY A. TAYLOR, et al. <br><br> Defendants. | ) ) ) ) ) ) ) ) Case No. 08-cv-00208 (CKK) ) ) ) ) ) ) |

**REPLY OF PLAINTIFF NAM TO THE LEGISLATIVE DEFENDANTS'
OPPOSITION TO INJUNCTION PENDING APPEAL**

Pursuant to the Court's Order of yesterday afternoon, Plaintiff National Association of Manufacturers ("NAM") replies to "Legislative Defendants' Memorandum . . . In Opposition To . . . Injunction Pending Appeal" ("Opposition"). The NAM incorporates by reference the Reply it filed earlier this morning and will endeavor to avoid repetition.

1. The Opposition tacitly concedes (at 6) that Section 207 will not force any disclosure of the existence or activities of a stealth coalition. Indeed, it expressly admits that, in a disclosure by a member whose employed lobbyists lobbied on behalf of a stealth coalition, "the organization's membership in the coalition would not be disclosed." *Id.* Moreover, and importantly, the Opposition does not deny that precisely the same disclosure would be made under existing law. Since forcing disclosure by stealth coalitions was the stated purpose for Section 207, there is a substantial appellate issue whether it serves that interest in a way that satisfied strict scrutiny.

2.      The Opposition asserts (at 6) that members of the NAM might use "that association to shield their lobbying activities." But no evidence or even legislative history is offered to show that is a problem, much less the serious problem necessary to satisfy strict scrutiny. After all, when the NAM or similar established organizations lobby, those who deal with them understand the interests represented, even if specific companies are not known. There is no proof that Congress needs to know the specific companies in such a situation. Indeed, the fact that Congress enacted alternatives under which individual companies are not identified, no matter how much they contribute, unless they also actually control the lobbying (something that almost never occurs), demonstrates that this benefit does not meet a compelling interest. At least there is room for substantial appellate judgment on this point.

Relatedly, the Opposition says (at 5) that such disclosure reveals "who is being hired, who is putting up the money, and how much," which is data the Supreme Court already held Congress may require. That approximates a ruling by this Court. With all due respect, however, the requirement to disclose active participants goes considerably further than that statement acknowledges. It reaches mere participants on the basis of activities that may fall far short of any degree of control and, indeed, may merely amount to assisting background research. Admittedly those participants will have made some modest financial contribution, but so will many others who are not identified. In the absence of any clear legislative history or evidence of a need to extend disclosure to this reach, there is a substantial appellate issue.

3.      The Opposition asserts (at 7) that the intent element of "lobbying activities" is not vague because the Court found "a person of ordinary intelligence" would have fair notice as to what was covered. It cites *Buckley v. Valeo*, 424 U.S. 1, 77 (1976). That is an accurate statement of what this Court concluded. However, after stating the "ordinary intelligence"

standard as sufficient to satisfy due process, *Buckley* immediately goes on to say that "Where First Amendment rights are involved, an even 'greater degree of specificity' is required." *Id.* (citation omitted). As *Buckley* earlier held, this greater specificity must be sufficient to avoid any heed to hedge, trim, or steer clear of legal uncertainty. *Id.* at 41-43 & n. 48. Indeed, *Buckley* famously insisted on an objective bright line test (i.e., "magic words"). There is a substantial appellate issue as to whether that controlling standard is met.

   4. The Opposition asserts (at 7) that the NAM "offers only speculation that harm may befall its members." Not so. To begin with, NAM offers concrete and undisputed testimony that members have historically insisted that their association activities not be disclosed, that many have expressed grave concern over the risk that Section 207 will force disclosure, and that they will terminate support and participation in any activity that poses a risk of resulting disclosure. Thus, the direct practical consequence to the NAM is impairment of its core First Amendment speech and petitioning. There also is undisputed testimony that disclosures will impair the NAM's trade secret interests in its confidential member data and will impair its goodwill and trust with its members. As to the members themselves, there is undisputed testimony that many regard disclosure as sufficiently threatening that they will self-censor rather than risk disclosure. This may not amount to the threat of direct assault or the like that the Supreme Court has held sufficient to prevent enforcement of facially-justified disclosure requirements. But there it constitutes sufficient harm to trigger strict scrutiny and to require elevated precision and, as already noted, there is a substantial appellate argument that those standards are not met here, meaning that the threat of self-censorship is a threat of First Amendment harm.

5.     The Opposition says (at 4) that one former Justice was of the opinion that a particularly stringent showing must be made for an injunction pending appeal that would defer implementation of a federal statute. But neither this Circuit nor the Supreme Court have adopted that standard. To the contrary, this Circuit employs the traditional preliminary injunction standard. Moreover, as previously noted, where statutes threaten constitutional rights, the presumption in their favor weakens and, when strict scrutiny applies, the strong presumption is that the statute is invalid. Of course, this Court has concluded otherwise in this case, but the whole theory of injunctions pending appeal is that substantial issues may merit appellate review before avoidable injury is inflicted.

There is a substantial likelihood that the NAM may succeed in appeal in showing that disclosures demanded by Section 207 violate its First Amendment rights, as well as its trade secrets and good will. Thus, it is threatened with irreparable injury. On the other hand, no one pretends there is anything magic about this coming Monday. Since Congress has legislated in an area that calls for the most searching judicial scrutiny, the fair and orderly course is to permit appellate review before disclosures are required.

Dated:  April 17, 2008                    Respectfully submitted,

                                                          _____/s/_____
                                                Thomas W. Kirby  (Bar No. 915231)
                                                    E-mail: tkirby@wileyrein.com
                                               Jan Witold Baran  (Bar No. 233486)
                                                    E-mail: jbaran@wileyrein.com
                                               Andrew G. Woodson  (Bar No. 494062)
                                                    E-mail: awoodson@wileyrein.com
                                               WILEY REIN LLP
                                               1776 K St., NW
                                               Washington, D.C. 20006

                                               202.719.7000

                                             Counsel for Plaintiff

5