**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ASSOCIATION OF MANUFACTURERS,<br><br>Plaintiff,<br><br>v.<br><br>HONORABLE JEFFREY A. TAYLOR, United States Attorney for the District of Columbia, *et al.*,<br><br>Defendants. | Civil Action No. 08-208 (CKK) |

**MEMORANDUM OPINION**
(April 18, 2008)

On April 11, 2008, this Court issued a Memorandum Opinion and Order denying Plaintiff, the National Association of Manufacturers'("NAM"), motion for judgment on the pleadings in this action. The NAM's action named as Defendants the Honorable Jeffrey A. Taylor, United States Attorney for the District of Columbia ("Taylor"), the Honorable Nancy Erickson, Secretary of the Senate of the United States ("Erickson"), and the Honorable Lorraine C. Miller, Clerk of the House of Representatives of the United States ("Miller," and collectively with Erickson, the "Legislative Defendants"). The NAM challenged § 207 of the Honest Leadership and Open Government Act of 2007 ("HLOGA"), Pub. L. No. 110-81, 121 Stat. 735, which amended § 1603(b)(3) of the Lobbying Disclosure Act of 1995 ("LDA"), 2 U.S.C. § 1601 *et seq.*, and requires disclosure of organizations that contribute significantly to the lobbying activities of a lobbyist's client and actively participate in the planning, supervision, or control of those lobbying activities. The NAM argued that § 207 violates the First Amendment by

impermissibly burdening its rights and those of its members to speak, associate, and petition the government, and further argued that § 207 is unconstitutionally vague both on its face and as applied to the NAM. The Court's 57-page Memorandum Opinion ("Mem. Op.") and the accompanying Order, issued on April 11, 2008, rejected the NAM's claims on the merits, concluding that § 207 is narrowly tailored to serve compelling government interests, and is neither vague on its face nor as applied to the NAM.

The NAM has now brought a Motion for a Stay and an Injunction Pending Appeal, requesting that the Court "issue a stay and injunction barring Defendants from implementing or enforcing § 207 . . . pending Plaintiff's appeal of this Court's April 11, 2008[] order and accompanying memorandum opinion." NAM Mot. for Stay at 1. In so doing, the NAM seeks to avoid complying with § 207's disclosure requirements in its LDA quarterly report due April 21, 2008. Defendant Taylor and the Legislative Defendants oppose Plaintiff's request and have filed separate Oppositions. The NAM has likewise filed a separate reply memorandum in response to each Opposition. The Court has thoroughly considered the parties' briefs, the relevant legal authority, and the entire record herein, and concludes that the NAM has failed to meet the stringent standards required to justify the extraordinary remedy of a stay or injunction pending appeal. The Court shall therefore deny the NAM's motion.

**LEGAL STANDARDS**

The following factors are to be considered when determining whether a stay or injunction pending appeal is warranted:

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the Court grants the stay; and

> (4) the public interest in granting the stay. To justify the granting of a stay, a movant need not always establish a high probability of success on the merits. Probability of success is inversely proportional to the degree of irreparable injury evidenced. A stay may be granted with either a high probability of success and some injury, or *vice versa*.

*Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958); *see also D.C. Circuit Handbook of Practice and Internal Procedures* Part VIII(a) (2003).[1]

Importantly, it is "the movant's obligation to justify the court's exercise of such an extraordinary remedy." *Cuomo*, 772 F.2d at 978; *see also Twelve John Does v. District of Columbia*, Civ. A. No. 80-2136, 1988 WL 90106, at *1 (D.D.C. Aug. 4, 1988) ("[a]n indefinite stay pending appeal is an extraordinary remedy, and is to be granted only after careful deliberation has persuaded the Court of the necessity of the relief") (citing *Virginia Petroleum Jobbers*, 259 F.2d at 925). "This Circuit has recently reiterated that the applicant must satisfy 'stringent standards required for a stay pending appeal.'" *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 230 F. Supp. 2d 12, 14 (D.D.C. 2002) (citing *Summers v. Howard Univ.*, Civ. A. No. 02-7069, 2002 WL 31269623 (D.C. Cir. Oct. 10, 2002)). Where a moving party fails to establish a substantial case on the merits, and further fails to "demonstrate that the balance of equities or the public interest strongly favor the granting of a stay," a motion for stay is properly denied. *Cuomo*, 772 F.2d at 972.

---

[1] "The test for a stay or injunction pending appeal is essentially the same" as the test for a preliminary injunction, "although courts often recast the likelihood of success factor as requiring only that the movant demonstrate a serious legal question on appeal where the balance of harms favors a stay[.]" *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 193 & n.5 (D.D.C. 2005) (citing *Holiday Tours*, 559 F.2d at 844 and *Cuomo*, 772 F.2d at 978).

## DISCUSSION

As an initial matter, while the NAM purports to seek both a stay and an injunction pending appeal, a stay of this Court's April 11, 2008 Order and accompanying Memorandum Opinion would have no practical effect on the NAM's obligation to comply with § 207's disclosure requirements in its April 21, 2008 LDA quarterly report. Further, the NAM does not seek to merely enjoin Defendants from enforcing § 207 against the NAM pending appeal of this Court's judgment, it seeks to enjoin all implementation and enforcement of § 207 pending appeal. *See* NAM Mot. for Stay at 1.[2] As such, the Court is cognizant of Chief Justice Rehnquist's reminder, made in the context of a denial of an application to enjoin the operation of an Act of Congress, that "Acts of Congress [are] presumptively constitutional." *Turner Broad. Sys., Inc. v. Fed. Commc'ns Comm'n*, 507 U.S. 1301, 1302 (1993) (Rehnquist, C.J., in chambers) (quoting *Marshall v. Barlow's, Inc.*, 429 U.S. 1347, 1348 (1977) (Rehnquist, C.J., in chambers)).[3] Moreover, "[u]nlike a stay, which temporarily suspends 'judicial alteration of the

---

[2] The Court notes that, although the HLOGA was signed into law by President George W. Bush on September 14, 2007, *see* President Bush Signs Honest Leadership and Open Government Act of 2007, http://www.whitehouse.gov/news/releases/2007/09/20070914-5.html, the NAM did not file its Complaint and Motion for a Preliminary Injunction in this action until February 6, 2008, and requested a final decision by April 14, 2008. At the agreement of the Court and the parties, the NAM's Motion for a Preliminary Injunction was converted to a motion for judgment on the pleadings, *see* Mem. Op. at 18-19, and the Court issued its Memorandum Opinion on the merits on April 11, 2008. The short window of time between the Court's issuance of its Memorandum Opinion and the April 21, 2008 LDA reporting deadline is therefore a function of the NAM's timing in bringing this action. The Court also notes that the NAM's motion for a stay and injunction pending appeal was not fully briefed until 5:00 p.m. on April 17, 2008.

[3] The NAM argues that in cases involving alleged burdens on core First Amendment rights, "the normal presumption of statutory validity is reversed and the statute is deemed invalid until stringently justified." NAM Mot. for a Stay at 3-4 & n.2 (citing *San Antonio Ind. School Dist. v. Rodriguez*, 411 U.S. 1, 16 (1973)). The NAM is correct, but overlooks the fact that the

status quo,' an injunction 'grants judicial intervention . . . [and] alter[s] the legal status quo." *Id.* (quoting *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers)). In particular, the wholesale injunction the NAM seeks might well "throw [§ 207's] disclosure scheme into uncertainty and disarray and confuse the disclosure obligations of numerous other filers that are already preparing to submit their April 21, 2008 reports in compliance with [] § 207," and who apparently do not share the NAM's views on § 207's constitutionality. Legisl. Defs' Opp'n at 10. Finally, even though the NAM does not request as much, the Court could consider issuing an injunction pending appeal limited to § 207's application to the NAM. Such relief, however, would not be justified because the Court's Memorandum Opinion did not differentiate between § 207's application to the NAM and its application to all other LDA registrants, but rather found § 207 to be facially constitutional and not vague.

Mindful of these inherent issues regarding the relief the NAM requests, the Court continues to consider the four factors relevant to the NAM's motion for a stay and injunction pending appeal, ultimately concluding that the NAM's motion fails to establish any of the four prerequisites for the extraordinary remedy it seeks.

*A. The NAM Has Failed to Show a Strong Likelihood of Success on the Merits*

"The first, and most important, hurdle which the petitioners must overcome is the requirement that they present a strong likelihood of prevailing on the merits of their appeal." *Am. Cetacean Soc. v. Baldridge*, 604 F. Supp. 1411, 1414 (D.D.C. 1985). "Without such a

---

Court's April 11, 2008 Memorandum Opinion concluded that § 207 survives strict scrutiny, i.e., that it is stringently justified in light of compelling government interests. *See* Mem. Op. at 22-44.

substantial indication of probable success, there would be no justification for the Court's intrusion into the ordinary processes of administration and judicial review." *Virginia Petroleum Jobbers*, 259 F.2d at 925. "Even should the petitioner show irreparable harm would result without the imposition of [a] stay, if the requirement of a strong likelihood of success is not met, the petition will be denied." *Am. Cetacean Soc.*, 604 F. Supp. at 1414 (citing *Blankenship v. Boyle*, 447 F.2d 1280 (D.C. Cir. 1971)). This does not mean that the applicant's chances of success on appeal must appear as a "mathematical probability," but that the trial court, in the exercise of its discretion, must weigh the probability of success on appeal in a "balance of equities" with the three other factors. *Holiday Tours*, 559 F.2d at 844. The motion to stay may be granted when a "serious legal question is presented, when little if any harm will befall other interested persons or the public, and when denial of the order would inflict irreparable injury on the movant." *Id.*

The Court's April 11, 2008 Memorandum Opinion relied upon well-established Supreme Court precedent upholding disclosure requirements in the contexts of lobbying, *United States v. Harriss*, 347 U.S. 612 (1954), and campaign contributions, *Buckley v. Valeo*, 424 U.S. 1 (1976), and *McConnell v. Federal Election Commission*, 540 U.S. 93 (2002), and concluded that § 207's disclosure requirement is narrowly tailored to serve two compelling government interests: providing Congress and the electorate with information regarding the influence of lobbyists on government decisions, and avoiding the appearance of corruption. *See* Mem. Op. at 22-31. In particular, the Court explained that Congress passed § 207 to "close[] a loophole that has allowed so-called 'stealth coalitions,' often with innocuous-sounding names, to operate without identifying the interests engaged in the lobbying activities." *Id.* at 27 (quoting 153 Cong. Rec.

S10709 (daily ed. Aug. 2, 2007) (statement of Sens. Feinstein, Lieberman, and Reid)); *see also* 153 Cong. Rec. S260 (daily ed. Jan. 9, 2007) (statement of Sen. Lieberman) (explaining that S.1 would "remove the cloak obscuring so-called stealth lobbying campaigns . . . [by] coalitions that . . . lobby on a range of issues that could never be identified by the name of the coalition."); *id.* at H5743 (daily ed. May 24, 2007) (statement of Rep. Doggett). The Court found that § 207 materially advances the proffered compelling government interests by closing that loophole, *id.* at 31-32, and rejected the NAM's claims that § 207 is both overinclusive and underinclusive, *id.* at 34-40. The Court ultimately concluded that § 207 is narrowly tailored because it appropriately requires only the disclosure of "the name, address, and principal place of business" of affiliates that meet § 207's disclosure thresholds. 2 U.S.C. § 1603(b)(3). As such, § 207 only seeks disclosure of the information necessary to reveal "who pays, who puts up the money, and how much," which *Harriss* found to be the valid purpose of lobbying disclosures. *Id.* at 40 (quoting *Harriss*, 347 U.S. at 625); *see also id.* at 35-41.

The Court then continued to consider the NAM's claims that § 207–and in particular the definition of "lobbying activities" underlying § 207–is unconstitutionally vague on its face, and as applied to the NAM. *See id.* at 45-46. The Court rejected the NAM's facial vagueness challenge, concluding "that § 207 is sufficiently 'easily understood and objectively determinable,' *McConnell*, 540 U.S. at 194, as to provide the NAM and other organizations like it with fair and clear notice of what § 207 requires of them." *Id.* at 55. The Court likewise rejected the NAM's as-applied challenge, which was premised upon its facial challenge, finding that the NAM's claims of burdensomeness did not demonstrate that § 207 was vague as applied to the NAM. *Id.* at 55-56.

The NAM's motion for a stay and injunction offers no points of law that undermine the Court's holdings or demonstrate any likelihood that the NAM will prevail on its appeal. Indeed, the NAM "has offered no new arguments in its motion, but rather rehashes arguments that have been rejected . . . ." *U.S. v. Judicial Watch, Inc.*, 241 F. Supp. 2d 15, 16 (D.D.C. 2003), *stay denied*, No. 03-5019, 2003 WL 1089413, at *1 (D.C. Cir. Mar. 6, 2003); *see also U.S. v. Herbert Bryant, Inc.*, Civ. A. Nos. 73-2211, Civ. A. 73-1903, 1990 WL 10270, at *2 (D.D.C. July 9, 1990) ("In . . . seeking a stay and/or injunction, [movant] has failed to present anything which would suggest that the decision reached by the Court is in error."). As the Legislative Defendants correctly note, the Court's 57-page opinion thoroughly addresses each of the arguments raised in the NAM's motion, and the Court therefore does not repeat all of the analysis included in its opinion. *See* Legisl. Defs' Opp'n at 5-7.

One of the NAM's arguments, however, merits additional treatment even though explicitly rejected in the Court's Memorandum Opinion. Specifically, the NAM argues that it is not, by its own self-reporting, a "stealth coalition" and that, as a result, § 207's application to the NAM demonstrates that the section does not advance its professed purpose of forcing disclosure by stealth coalitions. *See* NAM Mot. for Stay at 3-4; NAM Legisl. Defs. Reply at 1-2. The NAM's self-serving assertion that it is not a "stealth coalition," however, in no way warrants that conclusion. The name "National Association of Manufacturers" is a very generic one, and the term manufacturers is likewise generic. The NAM argues that "when the NAM or similar established organizations lobby, those who deal with them understand the interests represented," NAM Legisl. Defs. Reply at 2, but as the Court's Memorandum Opinion pointed out, even if members of Congress understand who controls the NAM's lobbying efforts, "it is doubtful that

the general public (whose informational interests § 207 supports) have an equally thorough understanding." Mem. Op. at 38-39. Further, the NAM's argument ignores the real possibility that the NAM's membership might change over time and that, in the absence of disclosure of the members who fund and direct the NAM's lobbying efforts, neither Congress nor the American public would be aware of such a change.

Simply put, the generic name "National Association of Manufacturers" provides no information as to whether the NAM's membership skews towards any particular segment of the manufacturing industry, and certainly does not reveal which of the NAM's over 11,000 members allied with manufacturing interests "actively participate[] in the planning, supervision, or control" of the NAM's lobbying efforts. In that way, the name National Association of Manufacturers is potentially no different than the "misleading names" the Supreme Court recounted in *McConnell*: "'The Coalition-Americans Working for Real Change' (funded by business organizations opposed to organized labor), 'Citizens for Better Medicare' (funded by the pharmaceutical industry), 'Republicans for Clean Air' (funded by brothers Charles and Sam Wyly)." 540 U.S. at 197.

In sum, the NAM's arguments provide no reason for revisiting the Court's conclusions on the merits of the NAM's claims. Mere repetition of the NAM's arguments does not demonstrate that the NAM is any more likely to succeed on the merits of its claims than it was when the Court issued its Memorandum Opinion. Moreover, even assuming that the NAM demonstrates "a serious legal question on appeal," that showing is insufficient where, as discussed below, the balance of harms does not favor a stay. *Al-Anazi*, 370 F. Supp. 2d at 193 & n.5.

*B. The NAM Has Not Shown That It Will Be Irreparably Harmed*

"Under this Circuit's precedent, the harms to each party are tested for 'substantiality, likelihood of occurrence, and adequacy of proof.'" *Judicial Watch v. Nat'l Energy Policy Dev. Group*, 230 F. Supp. 2d at 15 (quoting *Cuomo*, 772 F.2d at 976-77). "The Court must consider the significance of the change from the *status quo* which would arise in the absence of a stay, as well as likelihood of occurrence of the claimed injury, when determining whether [parties] have truly met their burden of demonstrating irreparable harm justifying imposition of a stay." *Id.* "A party moving for a stay is required to demonstrate that the injury claimed is 'both certain and great.'" *Cuomo*, 772 F.2d at 976 (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

The NAM's briefs argue that the NAM will suffer two distinct forms of harm if it is forced to comply with § 207's disclosure requirements on April 21, 2008. First, the NAM argues that if it is forced to disclose certain of its member organizations, those members will suffer retaliation in the form of boycotts and other action against them. This argument is entirely unavailing, however, because the Court's Memorandum Opinion specifically found that "the NAM offers only speculation that harm may befall its members if they are disclosed as connected to the NAM's lobbying activities." Mem. Op. at 44. The Court based this conclusion upon the fact that, even though the NAM's publicly available website already discloses over 250 of the NAM's member organizations, the NAM provided absolutely "no evidence of any past incidents suggesting that public affiliation with the NAM leads to a substantial risk of 'threats, harassment, or reprisals from Government officials or private parties.'" *Id.* (quoting *Buckley*, 424 U.S. at 74); *see also id.* at 43-45. The NAM's claims of harm in the form of speculative boycotts and other

action clearly do not constitute irreparable injury in the context of a motion for a stay or injunction pending appeal. As the D.C. Circuit has explained, "the injury must be both certain and great; it must be actual and not theoretical. Injunctive relief 'will not be granted against something merely feared as liable to occur at some indefinite time.'" *Wisconsin Gas Co.*, 758 F.2d at 674. Further, "[b]are allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur. The movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Id.* As the NAM clearly cannot make such a showing with respect to possible retaliation against the NAM or its members, the Court rejects the NAM's suggestion that its speculation constitutes irreparable injury.

The NAM's second claim of irreparable injury derives from the NAM's claims that § 207 burdens the rights of speech, petition, and association of the NAM and its members. According to the NAM, the "fact that individual members of the NAM will be publicly named on the organization's reports is itself sufficient to establish the harm." NAM Taylor Reply at 4. The NAM's argument in this respect is premised upon cases suggesting that, in the context of a motion for a preliminary injunction, an allegation of deprivation of First Amendment rights may be sufficient to meet the irreparable injury prong of the analysis. *See id.* (citing, *e.g.*, *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984)); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) (noting in the preliminary injunction context that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). However, even in the preliminary injunction context, the D.C. Circuit has interpreted *Elrod* "to require movants to do more than merely allege a violation of freedom of expression in order to satisfy the irreparable

injury prong. . . [r]ather, moving parties must also establish they are or will be engaging in constitutionally protected behavior to demonstrate that the allegedly impermissible government action would chill allowable individual conduct."). *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 301 (D.C. Cir. 2006). Further, in the preliminary injunction cases the NAM relies upon, the courts were considering preliminary injunction applications in the absence of a ruling on the merits.

Here, in contrast, the Court has already considered and rejected the merits of the NAM's claim that § 207 impermissibly burdens the First Amendment rights to speech, petition, and association of the NAM and its members. Mem. Op. at 22-44. Significantly, the Court considered the NAM's claims in two separate manners. The Court addressed the NAM's claims of associational harm pursuant to the standard set forth in *NAACP v. Alabama*, 357 U.S. 449 (1958) and *Buckley*, and concluded that in light of "the speculative nature of the NAM's allegations [of harm, discussed above,], 'the substantial public interest in disclosure identified by the legislative history of [§ 207 and other disclosure requirements] outweigh[s] the harm generally alleged.'" Mem. Op. at 44 (citing *Buckley*, 424 U.S. at 72). In addition, the Court explicitly accepted "the NAM's claim that § 207 allegedly substantially burdens the core First Amendment rights of the NAM and its members, albeit indirectly." *id.* at 24-25. The Court applied strict scrutiny to § 207's disclosure requirement and, as discussed above, concluded that it survived that rigorous level of analysis. *See id.* at 22-44. In so doing, the Court recognized that "there are governmental interests sufficiently important to outweigh the possibility of infringement [on First Amendment rights], particularly when the free functioning of our national institutions is involved." *Id.* at 30 (quoting *Buckley*, 424 U.S. at 66). The Court thus

thoroughly considered the possibility of harm to the NAM's First Amendment interests–which the NAM goes to great pains to rehash in support of its motion for a stay and injunction–and nevertheless found § 207 constitutional on its face and as applied. This conclusion distinguishes the instant case from a preliminary injunction application where a mere allegation of First Amendment injury might be sufficient to demonstrate irreparable injury. In light of the Court's conclusions that § 207 is narrowly tailored to advance compelling government interests and is neither vague on its face nor as applied to the NAM, the Court rejects the NAM's claims of irreparable injury.

*C. Other Parties Interested in This Action Would Be Irreparably Harmed*

The Court next considers the prospect that other interested parties would be harmed if the Court granted the relief the NAM seeks. The Legislative Defendants cogently argue that an injunction against § 207's implementation and enforcement would harm both Congress and the interested public because, as the Court's Memorandum Opinion thoroughly explained, § 207 is intended to provide members of Congress and the public with information to allow them to consider the influence of lobbying on government decisions. Mem. Op. at 28-29; *see* Legisl. Defs' Opp'n at 9. Enjoining the operation of § 207 would prevent members of Congress and the public from gaining access to the very information Congress sought to have revealed: the identity of those who "actively participate in the planning, supervision, or control" of lobbying efforts. Further, as the Legislative Defendants correctly note, the HLOGA shortened the period for LDA reporting from semi-annual to quarterly, and allowing the NAM to delay its disclosure would work against Congress' apparent purpose of requiring lobbying disclosures to be filed close in time to the lobbying activities they report. *Id.* Finally, as discussed above, the injunction the

NAM seeks might well wreak havoc on the other LDA registrants who are preparing to submit their reports, as required, on April 21, 2008, and who do not appear to share the NAM's views on § 207's constitutionality. In light of these considerations, the potential impact of the injunction the NAM seeks upon other interested parties clearly weighs against granting such extraordinary relief.

*D. The Public Interest Weighs Against Granting a Stay or Injunction*

The fourth and final factor to be considered by the Court when analyzing the NAM's request for a stay and injunction is where the public interest lies. "The public interest is a uniquely important consideration in evaluating a request for [interim relief]." *Am. Cetacean Soc.*, 604 F. Supp. at 1416 (quoting *Nat'l Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604, 616 (D.C. Cir. 1980)). Under the public interest prong, the views of "Congress, the elected representatives of the entire nation," are "another sense by which the public interest should be gauged." *Cuomo*, 772 F.2d at 978. "[A] court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation." *U.S. v. Oakland Cannabis Buyer's Co-op*, 532 U.S. 483, 497 (2001) (quoting *Virginia R. Co. v. Railway Employees*, 300 U.S. 515, 551 (1937)). As such, it is significant that granting the injunction the NAM seeks would serve to undermine the interests that Congress has targeted through § 207 and that this Court's Memorandum Opinion found to be compelling. As the *Harriss* Court recognized, lobbying disclosure serves "to maintain the integrity of a basic governmental process" and to "safeguard a vital national interest." 347 U.S. at 635-36. The public interest thus mitigates against enjoining the disclosures that Congress has seen fit to require, and that this Court has already found to be narrowly tailored to serve compelling government interests.

**CONCLUSION**

Based upon the foregoing, the Court concludes that the NAM has failed to demonstrate any of the four factors relevant to its request for a stay and injunction pending appeal. The Court shall therefore DENY the NAM's [20] Motion for a Stay and an Injunction Pending Appeal. An appropriate Order accompanies this Memorandum Opinion.

Date: April 18, 2008

*/s/*
COLLEEN KOLLAR-KOTELLY
United States District Judge